(April 18, 1907.)

STATE, Respondent, v. LEE PHINNEY, Appellant.

[89 Pac. 634.]

CRIMINAL LAW—MURDER PERPETRATED BY MEANS OF POISON—OFFENSES INCLUDED IN CHARGE OF MURDER—MANSLAUGHTER—PROVINCE OF JURY TO FIND GRADE OF OFFENSE.

1. Under an information charging murder as having been perpetrated by means of poison, it is in the province of the jury to find the degree or grade of the offense of which the defendant is guilty, and under the provisions of sections 7925 and 7926, Revised Statutes, the court cannot deprive the jury of such right by a peremptory instruction to the effect that the defendant, if guilty at all, is guilty of murder in the first degree.

2. Before a jury can find a defendant guilty of *murder* "perpetrated by means of poison, or by any other means whatever, they must first find that there has been an "unlawful killing with malice aforethought." The mere fact that a *killing* has been accomplished by means of poison does not of itself establish "malice aforethought."

3. Every murder necessarily includes the offense of murder in the first and second degree and manslaughter, and in all cases of murder the degree of criminality must be left to the jury to be found by them as a matter of fact. In a trial for murder, the statute (Revised Statutes, sections 7925 and 7926), leaves the question of the degree of the offense to be settled by the verdict of the jury, and the fact that the offense is charged to have been committed by the administration of poison, under section 6562, Revised Statutes, does not deprive the jury of the right or relieve them of the duty of finding the degree of the offense.

4. The fact that the jury finds the defendant guilty of a lower degree of offense than that established by the evidence is not a ground or cause for reversal on appeal from a judgment of conviction.

(Syllabus by the court.)

APPEAL from the District Court of the Second Judicial District for Nez Perce County.   Hon. Edgar C. Steele, Judge.

Defendant was informed against by the prosecuting attorney, charged with the crime of murder in the first degree, committed by the administration of poison.   Defendant was convicted of the crime of manslaughter and appealed from the judgment and an order denying his motion for a new trial.   *Affirmed.*

Clay McNamee, for Appellant.

Section 6562, Revised Statutes, dividing the crime of murder into two degrees, has been repeatedly construed by the supreme court of California.

''Where the case comes within either of these classes, the test question, 'Is the killing willful, deliberate and premeditated?' is answered by the statute itself, and the jury have no option but to find the prisoner guilty of the first degree.'' (*People v. Nichol,* 34 Cal. 211; *People v. Mooney,* 2 Idaho, 24, 2 Pac. 876; *People v. Sanchez,* 24 Cal. 17, 29.)

The information by its allegations expressly charges murder by the administration of poison to the deceased.   The statute declares in express terms that such a homicide is murder in the first degree.   The entire evidence in the case

shows that the crime was either murder in the first degree, or that no crime was committed.

It is error to instruct the jury as to murder in the second degree, when, under the facts ˙shown by the evidence, if defendant committed the homicide at all, he is guilty of murder in the first degree, and no other grade of homicide. (*Dresback v. State,* 38 Ohio St. 365; *Pliemling v. State,* 46 Wis. 516, 523, 1 N. W. 278; *State v. Alexander,* 66 Mo. 148; *State v. Talbott,* 73 Mo. 347; *State v. Kilgore,* 70 Mo. 547; *State v. Stoeckli,* 71 Mo. 559; *State v. Evans,* 1 Marv. (Del.) 477, 41 Atl. 136; *State v. Rose,* 129 N. C. 575, 40 S. E. 83; *State v. Greenleaf,* 71 N. H. 606, 54 Atl. 38, 44; *State v. Bertoch,* 112 Iowa, 195, 83 N. W. 967; *State v. Burns,* 124 Iowa, 207, 99 N. W. 721; *People v. Hall,* 48 Mich. 482, 42 Am. Rep. 477, 12 N. W. 665; *Washington v. State,* 36 Ga. 222; *Thornton v. Commonwealth,* 24 Gratt. (Va.) 657; *Washington v. State,* 1 Tex. App. 647; *Shaffner v. Commonwealth,* 72 Pa. St. 60, 13 Am. Rep. 649; *People v. Byrnes,* 30 Cal. 206.)

Defendants, tried for murder in the first degree, are prejudiced by instructions to the jury inducing them to convict for murder in the second degree, and are entitled to a new trial, where the case is not one for instructions on the law concerning murder in the second degree. (*State v. Mahly,* 68 Mo. 315; *State v. Talbott,* 73 Mo. 347; *Dresback v. State,* 38 Ohio St. 365; *Shaffner v. Commonwealth,* 72 Pa. St. 60, 13 Am. Rep. 649.)

The same is true relative to the giving of an instruction as to manslaughter. (*Dresback v. State,* 38 Ohio St. 365; *State v. Wagner,* 78 Mo. 644, 47 Am. Rep. 133; *State v. Kilgore,* 70 Mo. 547; *State v. Alexander,* 66 Mo. 148; *Pliemling v. State,* 46 Wis. 516-523, 1 N. W. 278.)

J. J. Guheen, Attorney General, B. S. Crow, Prosecuting Attorney, for Nez Perce County, and Edwin Snow, for the State.

No harm has been done to appellant, since the verdict of the jury was for a lower grade of offense than murder in the

second degree. (*State v. Alcorn,* 7 Idaho, 612, 97 Am. St. Rep. 252, 64 Pac. 1014.)

On an indictment for murder no injury is done defendant by an instruction to the jury as to the crime of murder, which instruction may be erroneous, if, on the trial, the jury find a verdict of manslaughter. (*People v. Swift,* 66 Cal. 348, 5 Pac. 505; *People v. Gordon,* 88 Cal. 422, 26 Pac. 502; *People v. O'Neill,* 67 Cal. 378, 7 Pac. 790; *People v. Boling,* 83 Cal. 380, 23 Pac. 421; *Foskey v. State,* 119 Ga. 72, 45 S. E. 967; *State v. Riddle,* 179 Mo. 287, 78 S. W. 606; *Downing v. State,* 11 Wyo. 86, 70 Pac. 833, 73 Pac. 758.)

In all cases of homicide the jury may properly return a verdict of murder in the second degree or of manslaughter. (*State v. Schieler,* 4 Idaho, 120, 37 Pac. 272; *State v. Hardy,* 4 Idaho, 478, 42 Pac. 507; *People v. Dunn,* 1 Idaho, 77; *People v. Walter,* 1 Idaho, 386; *People v. Iams,* 57 Cal. 115; *State v. Lindsay,* 19 Nev. 47, 3 Am. St. Rep. 776, 5 Pac. 822; *State v. Dowd,* 19 Conn. 388; 2 Wharton on Criminal Law, 6th ed., 1112; *State v. Underwood,* 35 Wash. 558, 77 Pac. 865; *State v. Howard,* 33 Wash. 250, 74 Pac. 382; *State v. Greer,* 11 Wash. 244, 39 Pac. 874; *In re Alcorn,* 7 Idaho, 101, 60 Pac. 561; *People v. Muhlner,* 115 Cal. 303, 47 Pac. 128; *State v. Ellington,* 4 Idaho, 529, 43 Pac. 62.)

The supreme court of Idaho has uniformly followed the literal meaning of section 7926 of the Revised Statutes of 1887: "The jury may find the defendant guilty of any offense the commission of which is necessarily included in that with which he is charged in the indictment, or of an attempt to commit the offense."

From the evidence in the case at bar the crime of manslaughter is fairly deducible. For the jury is entitled to construe all or any of the evidence in the case as most favorable to the defendant. (*United States v. Mingo,* 2 Curt. C. C. 1. Fed. Cas. No. 15,781; *Read v. Commonwealth,* 22 Gratt. (Va.) 924; Wharton on Homicide, 2d ed., 644-669.)

AILSHIE, C. J.—The defendant was prosecuted upon information, charged with the crime of murder committed by

the administration of poison. The information charged that the defendant "injected into the body and blood of the said Jeff Letton, by means of a certain hypodermic syringe, and needle, a certain deadly drug and poison, to wit, morphine, from the effects of which said poison injected and administered into his body as aforesaid, the said Jeff Letton did languish, and languishing, afterward on the sixth day of July, 1906, did die."

Upon the trial it appeared that while Letton was in a drunken sleep and unconscious, the defendant injected morphine into his arm, and that Letton never recovered consciousness thereafter, and died on the following day from the effects of the poison. The defendant was convicted of the crime of manslaughter and has appealed, and insists that the court erred in instructing the jury that they might bring in any one of four verdicts, namely, guilty of murder in the first degree, second degree, manslaughter, or not guilty. The court instructed the jury as to the law governing the different degrees of murder, and advised them that they might return a verdict for any one of the three grades of crime included in the information, or a verdict of not guilty. The defendant insists that since the charge against him was the crime of murder "perpetrated by means of poison," the jury should have returned only one of two verdicts; namely, guilty of murder in the first degree, or not guilty.

Section 6562 defines the degrees of murder and designates the class of cases in which the offense shall be murder of the first degree and those in which it shall be murder in the second degree. The section is as follows: "All murder which is perpetrated by means of poison, or lying in wait, torture, or by any other kind of willful, deliberate and premeditated killing, or which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, or mayhem, is murder of the first degree; and all other kinds of murder are of the second degree."

It will be noted that the statute says "All murder perpetrated by means of poison," etc., shall be murder of the first degree. Section 6560 defines murder as follows: "Mur-

der is the unlawful killing of a human being, with malice aforethought.'' Section 6565, Revised Statutes, defines manslaughter as follows: ''Manslaughter is the unlawful killing of a human being without malice,'' and thereupon divides it into two degrees and defines each degree. It should be borne in mind that all *killing* ''which is perpetrated by means of poison,'' is not *murder* of the first degree or even murder of the second degree, but all *murder* so committed is murder of the first degree. Before a jury can find a defendant guilty of *murder,* perpetrated by any means whatever, they must first find that there has been an ''unlawful killing with malice aforethought.'' The mere fact that a killing has been accomplished by means of poison does not of itself establish ''malice aforethought.'' Indeed, a death might be caused by the administration of poison and constitute manslaughter only or no offense at all. Sections 7925 and 7926 of the Revised Statutes prescribe the duties of a jury in a trial of cases of this kind, and are as follows:

Sec. 7925. ''Whenever a crime is distinguished into degrees, the jury, if they convict the defendant, must find the degree of the crime of which he is guilty.''

Sec. 7926. ''The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment, or of an attempt to commit the offense.''

By the foregoing provisions of the statute, it is made the duty of the jury to find the degree of the crime of which a defendant is guilty, where the offense charged is divisible into separate and distinct degrees or grades of crime included within the indictment or information.

It will be seen from these several provisions of the statute that while, as a matter of law, a defendant found guilty of murder committed by means of poison must necessarily be guilty in the first degree, and the jury should be so instructed, still the statute has delegated the right to, and imposes the duty upon, the jury of themselves determining as to the degree of offense as a matter of fact. The crime of murder is divided into first and second degrees, and that charge neces-

sarily includes the crime of manslaughter, and while the statute says that murder committed by means of poison shall be of the first degree, it also says that the jury shall have the right to fix the degree, and it makes no exception where the offense is committed by means of poison or any one of the other means enumerated as constituting murder in the first degree. The jury might conclude that the death was caused by means of poison, and yet be satisfied that it was without malice aforethought. In the latter case, it would be removed from the category of murder, and if any offense at all, would be manslaughter. If a person should administer poison to one for the purpose of relieving pain or with a view to giving him relief and with no intention of committing murder, and yet do so in a reckless or unlawful manner, or without due caution or circumspection, then he would be guilty of manslaughter, but it would clearly not embrace all the elements of murder.

At common law all murder was of the first degree, and no such distinction was recognized as that incorporated in section 6562, *supra*. This statute, departing from the common-law rule and dividing the crime into degrees, was adopted in Pennsylvania as early as 1794, and it appears to have been uniformly held in that state to have been the duty of the trial court to submit the question of the degree of the offense to the jury and to have made it the duty of the jury to find the degree.

In *Lane v. Commonwealth*, 59 Pa. St. 376, the court said: "It has never yet been decided in Pennsylvania that a verdict of murder in the second degree might not be given in a case of murder by poison. That it may be given is as unquestionable as the power of the jury is under the act to give it and impossible for the court to refuse it."

In *Shaffner v. Commonwealth*, 72 Pa. St. 60, 13 Am. Rep. 649, Justice Agnew refers to the previous decisions of the court on the subject, and says: "It was not only the right, but the duty, of the judge to inform the jury of the degree which the law attaches to murder by poison, and to instruct them in their duty under the law. It is only when the charge

becomes imperative and takes from the jury the right of deciding and pronouncing the degree of murder, that we have held it to be error."

Our statute, section 6562, appears to be almost an exact copy of the law adopted in Connecticut in 1846, and in *State v. Dowd,* 19 Conn. 391, in considering the right and authority of the jury to find the defendant guilty of murder in the second degree where the offense was charged to have been committed by means of poison, the court said: "In most of the cases mentioned in the statute, as constituting the crime of murder in the first degree, the lesser crime is manifestly included. Thus, if the charge were, that the murder was committed by the accused while lying in wait, the jury might find that it was not so committed, and convict him only of the lesser offense. So, if it were averred that the act was done by him while attempting to commit the crime of arson or rape, the jury might find that part of the charge untrue, and still convict the prisoner of murder in the second degree. Now, if the same rule applies to a case where the charge is for murder by poisoning, then the conviction, in this case, was legal. The language of the statute strongly favors such a construction. It provides that murder perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, shall be murder in the first degree; thereby implying that in all cases the crime must be the result of a willful, deliberate and premeditated act. . . . . But, however this may be, there is another provision in the statute more unequivocal. It says that the jury, if they find the accused guilty, shall ascertain in their verdict whether it be murder in the first or second degree. And if he be convicted by confession, the court shall determine the degree of crime, by examination of witnesses. This provision is positive, without any exception or qualification; and we do not feel authorized, in the construction of a statute like this, involving the life or death of the person accused, to make an exception where the legislature have made none."

A similar statute was passed in Ohio in 1835, and in *Robbins v. State,* 8 Ohio St. 131 (194), the court, in considering

the question, said: ''Now, in this case, the court charged the jury that if they found the defendant guilty as he stands charged in the indictment they must say *that he is guilty of murder in the first degree,* because, '*in certain cases murder may be of different degrees.*' This, as a legal proposition, was erroneous.  In all cases of criminal homicide, the crime is graduated, and may be one or the other of the three degrees; and if the jury find the accused guilty *as he stands charged in the indictment,* they must determine or ascertain, from the evidence before them, of which of the three degrees of the crime the defendant is guilty *as he stands charged in the indictment.*  But the legal proposition laid down by the court to the jury left them no discretion whatever.  They could not find the defendant guilty otherwise than as he stood charged in the indictment; and the court instructed them, if they found him guilty *as he stood charged,* they were bound to find him guilty of murder in the first degree; for the reason that in certain cases murder may be of different degrees. This was saying to the jury, in effect, that in this case, being a case of homicide by means of poison, the crime was not graduated, but must necessarily rise to the grade of murder in the first degree.  This was, therefore, ascertaining the degree of the offense by a legal proposition determined by the court, instead of leaving it to the jury to ascertain the degree of the offense from the evidence given on the trial.  Murder by means of poison cannot be made an exception.  The language of the statute is, '*that in all trials for murder,*' the jury shall ascertain the degree of the crime.  It is undeniable that manslaughter may be committed by means of poison.''

This latter case was commented upon and distinguished in *Dresbach v. State,* 38 Ohio St. 369, but was not overruled as to the point in question.

A similar statute seems to have been adopted in Virginia and Tennessee at an early date, and a similar conclusion has been reached by the courts of those states as to the power of the jury under such a statute.  (*Dale v. State,* 10 Yerg. (18 Tenn.) 551; *Commonwealth v. Jones,* 1 Leigh (Va.), 611.) The same statute is in force in the state of Nevada, and in

*State v. Lindsay,* 19 Nev. 47, 3 Am. St. Rep. 776, 5 Pac. 822, Justice Hawley, in considering the right of the jury to find the defendant guilty of any crime necessarily included within the charge, said: "A judge should always inform the jury of the degree which the law attaches to murder, by whatever means the crime may have been committed; but in every case it is the province of the jury, if the prisoner is found guilty, to determine and fix the degree by their verdict, and the courts cannot deprive the jury of their right to fix the degree by imperatively instructing them, in a case where the crime was committed by administering poison (or in any other case), that if they find the prisoner guilty they must find him guilty of murder in the first degree."

A similar conclusion seems to have been reached under the laws of the state of Washington in the case of *State v. Grear,* 11 Wash. 244, 39 Pac. 874.

Some authorities have been called to our attention which at first blush would seem to hold to the contrary view, but a careful examination of them satisfies us that upon principle but few, if any, of those cases are in conflict with the views above expressed. We are satisfied that the purpose and intent of the statutes and the reasons for the rule support the view we have here taken. We therefore conclude that although the defendant was charged with the crime of murder perpetrated by means of poison, and that it was the duty of the court to instruct the jury as to the law in such cases, and the grade of offense that they might find defendant guilty of; still, it was within the province of the jury to find the degree of the offense, and that even though the evidence might fully disclose that the defendant was guilty of a higher degree than that found against him, still the verdict could not be disturbed for that reason. It is not an uncommon thing for a jury, out of sympathy, or what they conceive to be extenuating circumstances, to find a defendant guilty of a lower degree or grade of offense than that of which the evidence clearly convicts him, but the fact that they do so is not a ground of reversal of the verdict and judgment. (*People v. Dunn,* 1 Idaho, 77; *People v. Walter,* 1 Idaho, 387; *State v.*

*Schieler,* 4 Idaho, 120, 37 Pac. 272; *State v. Hardy,* 4 Idaho, 478, 42 Pac. 507; *State v. Alcorn,* 7 Idaho, 612, 97 Am. St. Rep. 252, 64 Pac. 1014.)

We find no error that would require or justify a reversal of the judgment of conviction in this case. The judgment must be affirmed, and it is so ordered.

Sullivan, J., concurs.