(No. 6531. April 21, 1938.)

STATE, Respondent, v. WILLIAM HIX, Appellant.

[78 Pac. (2d) 1003.]

732

Carl Burke, Harry Keyser and Perce E. Hall, for Appellant.

J. W. Taylor, Attorney General, R. W. Beckwith, E. G. Elliott, Lawrence B. Quinn and D. W. Thomas, Assistants Attorney General, for Respondent.

AILSHIE, J.—Appellant was informed against upon the charge of murder in the first degree. For convenience we will refer to the appellant as defendant. The information contained two counts: First, that the defendant, on or about the 20th of November, 1936, "wilfully, feloniously, and of his deliberately premeditated malice aforethought, did shoot" and kill one Frank W. Miller. The second count charged that on or about the 20th day of November, 1936, at or near Mayfield, Elmore county, defendant, then and there being, did wilfully and feloniously, with intent to commit robbery from the person of Frank W. Miller, make an assault on said Miller with a certain gun by him the said

William Hix then and there held, and did then and there wilfully, feloniously, with intent to commit robbery from the person of Frank W. Miller, fire and discharge said gun at the person of the said Frank W. Miller and then and there inflicted upon him a mortal wound from which he, the said Miller, instantly died. Trial was had and defendant was convicted of the crime of murder in the first degree, with recommendation that the death penalty be inflicted and judgment was thereupon entered, from which this appeal has been prosecuted.

The evidence introduced was entirely circumstantial. There was no direct evidence to establish the principal or primary fact that defendant committed the homicide. In view of the fact, that the assistant attorney general who argued this case insisted that part of the evidence was direct instead of circumstantial, we pause to note that there is a material distinction between direct evidence of a primary fact, such, for instance, as is involved here; that is, the actual commission of a homicide; and evidence of the links in a chain of circumstances which, when all taken together, prove or tend to prove the commission of the primary criminal act involved. While the evidence of the particular circumstances may be direct and positive, that does not make the evidence of such circumstances direct and positive evidence of the major essential fact to be proven. In other words, the proof of the facts which go to make up the circumstances, from which the logical conclusion follows, that the man is guilty of a certain act, must, in themselves, be facts; but that does not constitute them either direct or positive evidence of the main fact, to wit, the commission of the act charged. They still remain links in the chain of circumstances which point either to guilt or innocence.

"Circumstantial evidence produces no witnesses who saw the questioned circumstance occur. It presents a series of facts related to the alleged principal fact, and, having placed them before the court as premises, suggests that they, together with the ordinary experiences of mankind, demand a conclusion that the alleged principal fact occurred. Circumstantial evidence fails its proponent if it comes from a source unworthy of belief, or if the premises cannot support the

needed conclusion." (*Sullivan v. Mountain States Power Co.*, 139 Or. 282, 9 Pac. (2d) 1038, 1042; 10 Cal. Jur., sec. 13, p. 683.)

Defendant's counsel requested the court to give the jury the following instruction:

"The jury is instructed that one of four verdicts may be rendered under the information of this case, that is: Verdict of Not guilty; Verdict of Guilty of Murder in the First degree; Guilty of Murder in the second degree; Guilty of Manslaughter."

The court refused to give this requested instruction and instead thereof gave the following. instruction:

"Under the information and the evidence in this case, it is within your province to find and return any one of two verdicts, forms of which will be submitted to you with these instructions; and if you find the defendant guilty you may decide whether the punishment which shall be inflicted upon him shall be death or imprisonment in the State Prison for life.

"Thus, you may render one of the following verdicts: First, Guilty of Murder of the first degree; or Second: Not guilty.

"And, if you find him guilty you may add to your verdict, first, that his punishment shall be death; or, that his punishment shall be imprisonment in the State Prison for life."

█ █ It was clearly error for the court to refuse the requested instruction and equally erroneous for the court to give the instruction which was given.

█ It is the established law of this state that every charge of murder necessarily includes the offense of murder in the first degree, murder in the second degree and manslaughter; and to refuse to give such an instruction in a murder case is a denial to defendant of a fair and impartial trial. Section 17–1103, I. C. A. (chap. 24, 1935 Sess. Laws, p. 41) defines the degrees of murder as follows:

"All murder which. is perpetrated by means of poison, or lying in wait, torture, or by any other kind of willful, deliberate and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate arson, rape, robbery, burglary, kidnapping or mayhem, is murder of the

first degree. All other kinds of murder are of the second degree.''

And sec. 19–2211 provides that the jury shall fix the degree. It provides:

''Whenever a crime is distinguished into degrees the jury, if they convict the defendant, must find the degree of the crime of which he is guilty.''

In *State v. Phinney,* 13 Ida. 307, 89 Pac. 634, 12 Ann. Cas. 1079, 12 L. R. A., N. S., 935, this court had under consideration the foregoing sections of the statute which were then secs. 6562 and 7925 of the Revised Statutes of 1887. The court said:

''By the foregoing provisions of the statute, it is made the duty of the jury to find the degree of the crime of which a defendant is guilty, where the offense charged is divisible into separate and distinct degrees or grades of crime included within the indictment or information.

It will be seen from these several provisions of the statute that while, as a matter of law, a defendant found guilty of murder committed by means of poison must necessarily be guilty in the first degree, and the jury should be so instructed, still the statute has delegated the right to, and imposes the duty upon, the jury of themselves determining as to the degree of offense as a matter of fact. The crime of murder is divided into first and second degrees, and that charge necessarily includes the crime of manslaughter, and while the statute says that murder committed by means of poison shall be of the first degree, it also says that the jury shall have the right to fix the degree, and it makes no exception where the offense is committed by means of poison or any one of the other means enumerated as constituting murder in the first degree.''

Further on in the opinion, the court observed:

''Some authorities have been called to our attention which at first blush would seem to hold to the contrary view, but a careful examination of them satisfies us that upon principle but few, if any, of those cases are in conflict with the views above expressed. We are satisfied that the purpose and intent of the statutes and the reasons for the rule support the view we have here taken.''

A kindred question arose some years later in the *Matter of McLeod,* 23 Ida. 257, 128 Pac. 1106, 43 L. R. A., N. S., 813, and the question was raised as to whether or not an information, which charged that the defendant "did then and there wilfully, unlawfully, feloniously and with malice aforethought, kill and murder one George Guay, a human being," would justify or support a verdict of "guilty of an assault with a deadly weapon." This court cited and quoted with approval from *State v. Phinney, supra,* and held that, since in the McLeod case the information failed to charge that the murder was committed "by an assault . . . . with a deadly weapon or instrument," it did not support a verdict of guilty of *assault with a deadly weapon,* the court saying:

"So, in the present case, the information might have charged the crime of murder in the language of the statute, or the information might have charged murder by an assault upon the person of another with a deadly weapon or instrument. In the first charge the defendant could be found guilty only of murder in one of the degrees specified in the statute —*murder in the first degree, murder in the second degree, or manslaughter,* if the evidence warranted such a finding. In the second charge, the jury could have found the defendant guilty of murder in any of the degrees, and also of the crime of assault with a deadly weapon or other instrument, if the evidence warranted such finding."

As pointed out in the McLeod case, a homicide might be committed with or without the use of a deadly weapon or instrument, and to charge a man with the crime of murder, without specifying the particular means and method by which it was accomplished, does not necessarily include the offense of assault with a deadly weapon. On the other hand, there can be no murder in the first degree which does not include the lesser charges of second degree murder and manslaughter, no matter what the means may have been that were employed for the perpetration of the crime.

This question was considered as late as 1932 in the case of *State v. Morrison,* 52 Ida. 99, 104, 11 Pac. (2d) 619, and this court, speaking through Mr. Justice Givens, said:

"The court instructed the jury that the defendant might be found guilty of manslaughter, which appellant contends is error because there is no evidence of manslaughter. This court has repeatedly held that upon a charge of murder in the first degree, the jury may find a defendant guilty of manslaughter, even though there is no evidence to show the lesser rather than the greater crime. Consequently there was no error in this instruction. (*State v. Schieler,* 4 Ida. 120, 37 Pac. 272; *State v. Alcorn,* 7 Ida. 599, 64 Pac. 1014, 97 Am. St. 252; *State v. Phinney,* 13 Ida. 307, 89 Pac. 634, 12 Ann. Cas. 1079, 12 L. R. A., N. S., 935. See, also, *State v. Smailes,* 51 Ida. 321, 5 Pac. (2d) 540.) Furthermore, there was evidence from the defendant himself, which might well justify such a verdict under the instruction given as to the effect of intoxication on intent, being a necessary ingredient of murder in the first degree."

The cases cited by the attorney general, in support of the instruction given by the court, are not thought to be in point in the present case. Some of them are distinguishable on the same or similar grounds stated by the court in *State v. McLeod, supra,* and others for the reason, as stated in the opinions, that the failure to give the instruction requested was not in fact prejudicial in the particular case. Such was the holding in *State v. Alvord,* 47 Ida. 162, 272 Pac. 1010, relied on by the state. There the defendant was charged with rape and on appeal he complained of the refusal of the trial court "to instruct the jury that appellant might be found guilty of simple assault." This court said:

"The argument is based on the premise that the jury, if so charged, might have found him guilty of simple assault. The jury was charged on the law of rape, attempt to commit rape, and assault with intent to commit rape. If the jury had found the defendant guilty of an offense next in degree above that of simple assault, this might support argument that they might have found him guilty of a simple assault, if instructed that they could do so. But with the option of finding him guilty of an intervening degree of crime, they refused it, and found him guilty of rape. Thus, there is no reasonable probability that they would have rendered a verdict of guilty of simple assault had they been instructed

as requested. Assuming, for the sake of argument, that the instruction should have been given, yet in this case it is not reversible error."

There is no homicide case in this state supporting the rule for which the state contends. It has been variously argued, on one side, that failure to give instructions and submit verdicts to a jury, for lesser offenses included within the charge of the greater, is prejudicial and detrimental to the rights of the accused, for the reason that the jury might feel that the nature of the evidence was such that they would not be willing to acquit defendant outright, and at the same time they would hesitate to convict of the greater offense; and that if the instructions and verdict were submitted for the lesser offenses, the jury would probably select one of the lesser offenses and return a verdict thereon. It is argued with equal force on the other hand that failure to give instructions and submit verdicts on the lesser offenses is beneficial to the defendant, for the reason that if the jury have any doubt as to the guilt of defendant of the greater offense, they will acquit him altogether, since they are given no authority to compromise on a lesser offense. These contrary views open a large field for debate and speculation to which no definite and certain answer can be made. In fact it seems to us that there is no reasonable probability that it would work the same way in every case. In some instances it might result in acquitting a defendant who would otherwise be convicted of an intermediate degree of crime; while in another case it might result in the conviction of an accused of a more serious offense than he would otherwise have been convicted of, had the jury been authorized to return a verdict for a lesser offense. These very reasons, doubts and uncertainties as to the views a jury may take of the case, render it essentially imperative that the court follow the statutes and the established rules of substantive law, in advising the jury as to their privileges and duties in arriving at a just verdict in a case involving the liberty and life of an accused.

The giving by the court of instruction No. 13 is assigned as error. The instruction as given is as follows:

"The question is frequently asked by jurors: What is circumstantial evidence? And, Is circumstantial evidence alone sufficient to convict a defendant of crime?

"Circumstantial evidence in criminal cases is the proof of such facts or circumstances connected with or surrounding the commission of the crime charged, as tend to show the guilt or innocence of the party charged. These facts and circumstances must be sufficiently conclusive to convince the jury to a moral certainty and beyond a reasonable doubt of the guilt of the accused as charged in the Information before the jury can bring in a verdict of guilty. And, if the facts and circumstances shown by the evidence in any case, are sufficient to satisfy the jury beyond a reasonable doubt of the guilt of the accused, then the evidence in the case is sufficient to warrant a conviction, though part or all of such evidence be circumstantial. The law demands a conviction wherever there is sufficient legal evidence to show a defendant's guilt beyond a reasonable doubt, and circumstantial evidence is legal evidence."

This is substantially the same instruction that was approved by this court in *State v. Ramirez,* 33 Ida. 803, 812, 199 Pac. 376, and *State v. Healey,* 45 Ida. 73, 81, 260 Pac. 694. While this instruction has heretofore been approved, it is open to the criticism that was made in case of a somewhat similar instruction in *State v. Marren,* 17 Ida. 766, 785, 107 Pac. 993, that it had "a tendency to confuse the meaning of 'reasonable doubt' as defined in other instructions." Furthermore in the instant case the expression, "though part or all of such evidence be circumstantial," may well have lead the jury to the belief that the court thought there was direct evidence somewhere in this case tending to establish the state's contention, which, as hereinbefore noted, was not the case. A statement of the reason for a rule of law or argumentative reasoning in support thereof may be entirely sound and yet it would not be proper to give it as an instruction to a jury. As was said in the Marren case:

"It is proper for counsel to argue to the jury whether or not the evidence is sufficiently strong when circumstantial to authorize a conviction, but it is not proper for the court to enter into a discussion as to the weight of any specific

class of evidence or the effect which should be given to the evidence by the jury *as compared with any other class of evidence."*

 Defendant assigns as error the refusal of the court to give the following instructions:

"Requested Instruction No. 2.

"You are instructed that before you can find a defendant guilty of the crime charged, based solely on circumstantial evidence, you must find beyond a reasonable doubt that the circumstances are consistent with the guilt of the defendant, and inconsistent with his innocence, and incapable of explanation on any other reasonable hypothesis than that of guilty."

"Requested Instruction No. 4.

"You are instructed that where the evidence can be reconciled, either with the theory of innocence or of guilt, the law requires that you adopt the theory of innocence."

The court should have given these requested instructions. They were taken, apparently, literally from *State v. Marcoe,* 33 Ida. 284, 193 Pac. 80, in which the late Justice Rice, speaking for the court, said:

"In order to sustain a conviction based solely on circumstantial evidence, 'the circumstances must be consistent with the guilt of the defendant and inconsistent with his innocence, and incapable of explanation on any other reasonable hypothesis than that of guilt.' (*Broshears v. State,* 17 Okl. Crim. Rep. 192, 187 Pac. 254.)

"If the evidence can be reconciled either with the theory of innocence or of guilt, the law requires that the theory of innocence be adopted."

The Marcoe case has been repeatedly cited with approval. It is true, however, that some qualifying expressions have been used and comment has been made on the instruction covered by these requests until it has, from time to time, taken on qualifications which in effect have seemed to contradict the main statement of the instructions. This appears in *State v. Jester,* at page 568 of 46 Ida., 270 Pac. 417, where an extensive quotation is made from *State v. McLennan,* 40 Ida. 286, 231 Pac. 718. By referring back to *State v. McLennan,* 40 Ida., at page 302, it will be found that the writer of the

opinion was discussing the reasons and necessity for admissions of circumstantial evidence in criminal cases and cited successively 16 C. J., sec. 1566, p. 762, *State v. Marcoe,* 33 Ida. 284, 193 Pac. 80, and 16 C. J., sec. 1568, page 763. Now, referring to the citations there given, it will be seen that one of the sentences contains the substance of defendant's requested instruction No. 2, which was evidently taken from the Marcoe case. The other discussion, both preceding and following the statement from the Marcoe case, was evidently taken from the text in Corpus Juris. We then turn to Corpus Juris and find that the text cited is one of the digester's composite statements of the law, containing a phrase or clause from a decision of one court and one from another court, and still others from other courts, no two of which agree.

We then turn to the footnote and find more than a page of citations of cases from 37 different jurisdictions, some one of which supports any rule any one may advocate. Notwithstanding the variety of weasel words that have been from time to time added as explanations or qualifications of the rule stated in the Marcoe case, it still stands out as the clearest, simplest and most easily understood statement of the rule to be followed by a jury, in determining the guilt of an accused on circumstantial evidence, that can be found in the books, and it ought to be given in all cases where proof that defendant committed the homicide is wholly circumstantial.

The instruction, No. 14a, given in this case, instead of requested instructions 2 and 4, *supra,* illustrates the danger of argumentative explanations of the rule. It could not help but confuse the jury and leave them in doubt as to just how much *must be proven* and *how much* can be taken as "a conclusion or inference of guilt." It reads as follows:

"But you are instructed that the evidence need not demonstrate the guilt of the defendant beyond the possibility of his innocence; *if the circumstances proved produce a moral conviction to the exclusion of every reasonable doubt.* THEY NEED NOT BE ABSOLUTELY INCOMPATIBLE, ON ANY REASONABLE HYPOTHESIS, WITH THE INNOCENCE OF THE ACCUSED. *While such evidence, to be sufficient, must create more than a suspicion of guilt, a mere possibility of innocence will not prevent a conviction where*

*the conclusion or inference of guilt is logical. A theory of innocence must be rational and* MUST FIND ITS SUPPORT IN FACTS. *You are not required to adopt an unreasonable theory or one* NOT FAIRLY FOUNDED ON EVIDENCE. *You are not required* to give to circumstances a strained or artificial construction in determining whether they are consistent with innocence."

The italicized portions of the foregoing instruction are peculiarly confusing and the capitalized portion is clearly prejudicial. The instruction as a whole would most likely lead a jury to conclude that there must be *some evidence* in the case, either on the part of the defendant or by the state, which raises the "inference" and gives rise to the "conclusion" that the defendant is not guilty; in other words, that the defendant's "theory of innocence must be rational and must find its support *in facts or . . . . on evidence.*" Whereas, the law allows a defendant to rest upon the lack of evidence on the part of the state to prove him guilty and the primary inferences are that he is innocent. The proof must establish his guilt. The absence of proof, whether it be circumstantial or direct, entitles the defendant to rest on the legal inference that he is innocent. Circumstantial evidence can be so certain and definite as to leave no room for reasonable doubt and in such case an average jury will generally convict, but circumstances can sometimes be very strong against an innocent person but at the same time not exclude a reasonable theory of innocence. In such case circumstantial evidence is very dangerous as it arouses violent suspicions which are difficult to explain or rebut even by an innocent person.

For the foregoing reasons the judgment must be reversed and it is so ordered, and the case is remanded with direction to grant a new trial.

Holden, C. J., and Morgan and Givens, JJ., concur.

Budge, J., concurs in the conclusion.