**BARBEAU v. UNITED STATES.**

No. 12715.

United States Court of Appeals Ninth Circuit.

Dec. 17, 1951.

As Amended on Denial of Rehearing Jan. 24, 1952.

Stephens, Circuit Judge, dissented.

See also, 92 F.Supp. 449.

George B. Grigsby, Anchorage, Alaska, for appellant.

J. Earl Cooper, U. S. Atty., Ralph E. Moody, Asst. U. S. Atty., Anchorage, Alaska, for appellee.

Before DENMAN, Chief Judge, and STEPHENS and ORR, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from a judgment of conviction in the Alaska District Court for manslaughter by culpable negligence.

The appellant Barbeau was indicted for first degree murder under 3 A.C.L.A.1949, § 65–4–1, which reads: "First degree murder. That whoever, being of sound memory and discretion, purposely, and either of deliberate and premeditated malice or by means of poison, or in perpetrating or in attempting to perpetrate, any rape, arson, robbery, or burglary, kills another, is guilty of murder in the first degree, and shall suffer death."

The indictment returned by the Grand Jury charged: "That on or about the 18th day of February, 1950 at Anchorage, Third Judicial Division, District of Alaska, Lilburn H. Barbeau purposely and of deliberate and premeditated malice killed Paul Gunn by shooting the said Paul Gunn with a pistol."

On a plea of not guilty, the jury found Barbeau not guilty of murder in the first degree, and not guilty of murder in the second degree, but found him guilty of manslaughter by culpable negligence.

Four issues merit our attention on the appeal from this verdict: (a) did the indictment charge the offense for which the defendant was convicted; (b) was the evidence of negligence sufficient to justify the verdict of culpable negligence; (c) was it error for the district court to overrule the defendant's motion to exclude, from the exhibits taken by the jury, those relating to motive; and (d) was it error for the district court to deny the defendant's motion for acquittal on the charge of second degree murder?

(a) The Federal Rules of Criminal Procedure, 18 U.S.C.A., which apply to the Alaska district court[1] provide: "Conviction of Less Offense. The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense."[2]

Alaska has its own Criminal Code and 3 A.C.L.A.1949, § 66–13–74, provides: "* * * That in all cases the defendant may be found guilty of any crime the commission of which is necessarily included in that with which he is charged in the indictment, or of an attempt to commit such crime."

Although the wording of these two provisions is slightly different, they are the same in substance. They represent the same policy of liberalizing the rules of criminal pleading. Since the struggle to break away from the early formalism of criminal pleading is still in progress, the question of whether manslaughter by culpable negligence is included in the offense of first degree murder, for the purpose of the indictment and verdict, is not yet completely settled. The question has seldom arisen because culpable negligence is not punished in many states, and where it is punished, it is not an important part of the local criminal law.

In states within the jurisdiction of this court, the tendency has been to regard negligent homicide as included in the crime of murder. Arizona, California, Idaho and Montana all define manslaughter through lack of due care in the same words: "Manslaughter is the unlawful killing of a human being without malice. * * * in the commission of a lawful act which might produce death * * * without due caution and circumspection."[3] This specific kind of manslaughter is included in the general definition of manslaughter; there is no

1. Rule 54(a) (1).

2. Rule 31(c).

3. Ariz.Code Ann.1939, § 43–2904; Cal. Penal Code 1949, § 192; 4 Idaho Code 1948, § 18–4006; 8 Revised Codes of Mont.1947, § 94–2507.

separate statement in another section of the criminal code.

Nevada has the same definition with only slight changes in the wording;[4] and Oregon's definition is virtually the same,[5] although the definition is in a section separate from the general definition of manslaughter. Washington makes the only significant departure in legislative drafting by defining manslaughter as any kind of homicide which is not excusable or justifiable and which is not set out specifically in other sections of the criminal statutes.[6] Negligent homicides are prosecuted as manslaughter under this section. The Alaska statute on manslaughter by culpable negligence follows the Oregon technique in that it is set out in a section separate from the general definition of manslaughter.

All of these states provide in substantially similar terms that a jury may return a verdict on a lesser or included offense in the crime charged by the indictment.[7]

The courts of California,[8] Idaho,[9] Montana,[10] Oregon[11] and Washington[12] have all held that a charge of murder will support a conviction for the crime of manslaughter. Three of these cases in states of the Ninth Circuit jurisdiction involve facts which showed that the defendant was culpably negligent in his conduct which preceded the homicide. However, none of them is on all fours with the present case since in one of them[13] the indictment was for voluntary manslaughter; in another[14] there was evidence sufficient to find conduct more serious than negligence; and in the third[15] the indictment was for involuntary manslaughter. But the language of these cases shows no reason for setting apart the type of manslaughter accomplished through culpable negligence. All of these decisions state the generalization that *all* degrees of homicide which the law will punish are included in a charge of unlawful killing, so long as the verdict finds a lesser degree of homicide than was charged in the indictment.

■ We regard the logical extension of these cases in the Western states as the sound view on the question before us. The gravamen of the crime of negligent homicide is the same as that for murder and the same as that for voluntary manslaughter. All are homicides which are not excusable under the law. It is true that they require different states of mind for culpability but this difference goes only to the degree of punishment. It is fruitful to note that most courts have had no difficulty in holding that first degree murder includes voluntary and involuntary manslaughter, although the former requires the specific intent to kill while the latter two do not.

■ The purpose of specificity in the indictment is, primarily, to give the defendant the benefit of his Constitutional right to be informed of the nature and cause of the accusation against him and, secondarily, to protect him from subsequent prosecution for the same offense.[16] These are practical

4. Nev.Comp.Laws 1929, Hillyer, § 10069.

5. 3 O.C.L.A. § 23–406, 1943 Pocket Supp.

6. 4 Rem.Rev.Stat. § 2395.

7. Ariz.Code Anno.1939, § 44–1923; Cal. Penal Code 1949, § 1159; 4 Idaho Code 1948, § 19–2312; 8 Revised Codes of Mont., 1947, § 94–7408; 5 Nev.Comp. Laws 1929, Hillyer, § 9974; 3 O.C.L.A. § 26–948; 4 Rem.Rev.Stat. § 2163.

8. People v. Mount, 93 Cal.App. 81, 269 P. 177; People v. Tugwell, 32 Cal.App. 520, 163 P. 508; Cf. People v. Pearne, 118 Cal. 154, 50 P. 376; Charge of voluntary manslaughter includes negligent homicide.

9. State v. Sprouse, 63 Idaho 166, 118 P. 2d 378; State v. Phinney, 13 Idaho 307, 89 P. 634, 12 L.R.A.,N.S., 935; Cf.

State v. Gee, 48 Idaho 688, 284 P. 845 charge of involuntary manslaughter covers negligent homicide.

10. State v. Crean, 43 Mont. 47, 114 P. 603; Cf. State v. Mumford, 69 Mont. 424, 222 P. 447.

11. State v. Nortin, 170 Or. 296, 133 P.2d 252; State v. Charlie Sing, 114 Or. 267, 229 P. 921; State v. Setsor, 61 Or. 90, 119 P. 346.

12. White v. Washington Territory, 3 Wash.T. 397, 19 P. 37, strong dictum.

13. People v. Pearne, supra, note 8.

14. State v. Nortin, supra, note 11.

15. State v. Gee, supra, note 9.

16. Atwell, Fed.Crim.Law 29, 111.

requirements and the indictment need contain no magic formulae in order to succeed. Have these purposes been met, as far as Barbeau is concerned?

It is clear that Barbeau was informed of the charge against him to the extent that he was not substantially prejudiced during the trial. At the close of the government's case, defendant's attorney moved for acquittal on the charge of first degree murder. In his argument at that time, counsel stated: "The only question which could be submitted to the jury, in my opinion, Your Honor, is the question of whether or not the homicide might or might not have been negligent—the offense also defined by the statutes—and which may be deemed manslaughter under provisions of 65-4-8." That section of the Alaska Code provides:

"§ 65-4-8.—Negligent homicide. That every killing of a human being by the culpable negligence or another, when such killing is not murder in the first or second degree, or is not justifiable or excusable, shall be deemed manslaughter, and shall be punished accordingly."

The attorney renewed his motion at the close of all the evidence and again conceded that there was evidence on the question of negligence to go to the jury, stating: "We have here, it seems to me, the only thing that could possibly go to the jury, the question of whether or not there was such negligence on the handling of the weapon on that occasion as to amount to culpable negligence. And I don't see how the purpose—the necessary elements of a crime of the second degree are present in this case to justify giving the instruction to the jury and we therefore request that the instruction not be given and that the jury be confined to manslaughter by culpable negligence."

In accordance with the attorney's stated view of the Alaska law, the court gave the instruction on the crime of manslaughter by culpable negligence quoted infra.

While the views of defendant's attorney as to the laws of Alaska are not determinative, here he states that he interpreted the Alaska homicide statutes as requiring no more than what was stated in the indictment to present to the jury the issue whether his client was guilty of manslaughter by culpable negligence. The Sixth Amendment was amply satisfied in the light of these facts. We thus have the interesting situation where the appellant's attorney claims error in the district court's acceptance of his view of the law leading to its giving to the jury the appropriate instruction under that law. Here is clearly applicable Rule 52(a) of the Criminal Rules requiring us to disregard any "defect, irregularity or variance which does not affect substantial rights". This rule is a restatement of fromer § 556 of Title 18 which provided: "No indictment found and presented by a grand jury in any district or other court of the United States shall be deemed insufficient, nor shall the trial, judgment or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant. * * *"

Nothing in this opinion is in conflict with our decision in Giles v. United States, 9 Cir., 144 F.2d 860. There a conviction for negligent homicide under the Alaska statute was upheld and we affirmed the district court's refusal to give an instruction on the crime of intentionally pointing and discharging a firearm. The latter crime is not a homicide and is not included in the crime of negligent homicide. Our decisions in Crutchfield v. United States, 9 Cir., 142 F. 2d 170 and Hopper v. United States, 9 Cir., 142 F.2d 181 have both given a liberal construction to indictments drawn in this circuit.[17]

▉ Since the primary requisite of specificity in the charge—informing the accused—has been met, it is proper to say that negligent homicide is included in a charge of murder. This being so and Barbeau having been convicted of negligently killing Gunn with a pistol on February 18, 1950, at Anchorage, he may not later be convicted of deliberately killing Gunn.

(b) The court properly instructed the jury that in order to convict Barbeau of manslaughter by culpable negligence it must

17. See 47 Col.L.R. 693 (1947).

find " * * * negligence of such a degree, so gross and wanton, as to be deserving of punishment. * * * Culpable negligence is something more than the slight negligence necessary to support a civil action for damages. Culpable negligence implies a reckless disregard of consequences, a needless indifference to the rights and safety and even the lives of others."

The facts concerning Barbeau's conduct, which are admitted, are the following: On February 18, 1950, at about 2:30 p. m., the appellant Barbeau gathered at his home with Jack Howe and Paul Gunn for the purpose of exchanging a Walther P–38 pistol in return for a pistol of the same make and calibre owned by Howe. Gunn, who was Barbeau's debtor on the purchase of a Cadillac car, had driven the men to the house in the car. He and Barbeau were at that time suspected by the police of stealing the transmission which had recently been put in the car. In the living room of the house, Gunn sat across from the other two men who sat on a settee approximately 6 feet distant. There they engaged in exchanging the grips of their guns before making the mutual exchange of the guns themselves. Barbeau took Howe's gun, placed it in his lap, shoved in the magazine, and was reaching for another shell on a cushion near him when the pistol fired the bullet that killed Gunn. Presumably, the impact of shoving in the clip had caused the slide to fly forward, carrying a shell into the chamber, the hammer following with it. There had been no argument between the men, and no boisterous conduct before the shot.

There was a conflict in the evidence as to whether Barbeau had put the safety mechanism on the gun before shoving the clip into the gun. According to the testimony of a policeman, Barbeau stated that *after* he fired the gun he put it "on safety." The testimony of Policeman Fox on direct examination is as follows:

"Mr. Moody: Did you find any weapons there or did anyone give you any weapons?

"A. This weapon was found lying under the edge of the settee and I left it there. I did not pick it up or move it in any way.

"Q. Did anyone make a statement as to whether or not that was the gun that had been fired?

"A. Mr. Barbeau said after he had fired this gun he put it on safety and laid it down under the edge of the settee. * * *

"Q. Did Mr. Barbeau make any statement in regard to anything he did to the gun after the shooting happened, other than laying it on the floor?

"A. Yes, he said he put it on safety and laid it down on the floor and then ran to the side of Gunn."

On cross-examination Fox testified:

"Mr. Grigsby: Did you testify that out at the house before you left the place that Barbeau said anything to you with reference to laying the gun down after the shot was fired?

"A. Yes, he did.

"Q. And what did he say with reference to that?

"A. He said that he put it on safety and laid it down there at his feet.

"Q. And do you know that he said that he put it on safety after the shot?

"A. Yes. He said that the shot—the gun went off. He took the gun and put it on safety and laid it down at his feet."

Barbeau later stated that the safety was on when he fired the shot. The jury evidently resolved the conflict against Barbeau and this evidence is sufficient to sustain a finding of culpable negligence, considering the close proximity of Gunn to the defendant and the obvious danger in dealing with firearms. Thus the case does not come within the reasoning of People v. Angelo, 246 N.Y. 451, 159 N.E. 394, 396, where the court said: "Under a given state of facts, whether negligence is culpable is a question of judgment. Ordinarily for the judgment of the jury, as is the question whether negligence exists at all. But in the one case as in the other it may become a question of law. If the negligence is so slight as not to reach the required standard, the

court should advise an acquittal of the accused."

■ (c) Certain exhibits relating to Barbeau's possible motive in the crime had been introduced in the trial; but Barbeau argues that they should have been stricken on his motion when the court removed the first degree murder charge from the jury's consideration. However, the charge of second degree murder was still before the jury and these exhibits were relevant to show the intent necessary for that crime.[18]

■ (d) A motion for judgment of acquittal of second degree murder on the ground that there was no evidence of an intent by Barbeau to kill was properly denied. The exhibits on motive, above referred to, were still in the case. They were circumstantial evidence of an intent to kill; and they raised a sufficient inference of intent to leave the issue of second degree murder to the jury. In any event, since Barbeau was not convicted of second degree murder, he cannot now claim prejudice on his appeal.

The judgment of conviction is affirmed.

STEPHENS, Circuit Judge.

I dissent.

The very name of the crime "manslaughter by culpable negligence" connotes a bad act. It is not a crime to be negligent. It is the fate of all to be more or less negligent by character and it is somewhat a conflict of terms to qualify negligence with the word "culpable".

Strictly speaking, a negligent act is one performed unwittingly and it is abhorrent to name an unwitting act a crime. The better term, it seems to me, would be "manslaughter by culpable recklessness". By such term it would be apparent that no innocent act could be warped into a crime as I think was done in the instant case and as I think has been done in numerous cases. A glance at the case excerpts in 10 Words and Phrases 639 et seq., and particularly at page 640, will show that the principles I here state are amply supported by authority. It will also be revealed that cases have mistakenly been held criminal which arise from mere negligent acts. Of course, one cannot generally act with disregard of others' safety without risking a compensatory judgment for resulting injury but an oversight can hardly be prescribed as a crime. The court relates the incident of the shooting and places the culpability upon the idea that there is conflict as to whether the safety catch of the gun was on "safety" when the gun went off. The court say the jury resolved that question and that it was culpable negligence to load the gun while the safety was not "on". There is not a word of substantial evidence in the case that the safety was not on. It is significant that the government does not even mention this phase of the case in its brief on appeal. If the jury so found, it was an inference with scarcely anything to support it except that when the safety is on, guns do not ordinarily discharge. Appellant testified directly that the catch was on and there is creditable evidence in the case to the effect that the particular make of gun is in fact defective in a manner to permit the discharge exactly as appellant related it.

Of course, the evidence is not weighed on appeal, but it seems to me the jury followed mere suspicion. Wherein is found in this evidence any act remotely suggesting wantonness, gross negligence, or anything denoting an intent to act recklessly of another's safety? There must be evil or there is no crime. Pages and pages of testimony and certain exhibits are in the case relating to a possible wrongdoing relating to an automobile in the interest of showing a motive for the killing. Of course, all of this testimony was applicable only to the degrees of homicide above "manslaughter by culpable negligence" since that crime imports no intent to kill. The jury should have been so instructed. No instruction was offered on this point by appellant but there was objection to the exhibits on that subject going to the jury room for consideration and there were motions made for acquittal. It is probable that this motive evidence greatly prejudiced appellant's case.

---

18. Underhill's Crim. Evidence, 4th ed. § 559.

I think the conviction rests upon suspicion supported by irrelevant and immaterial evidence and should be reversed.

Upon petition for rehearing.

The petition for rehearing is denied.

STEPHENS, Circuit Judge, concurring:

I join in the action of the court denying the petition for a rehearing for the reason that the court examined every point made in the petition with great care and came to its decision advisedly. However, I adhere to my dissent. In reading my dissenting opinion I would wish my statements, to the effect that no act can be a crime without specific intent in its doing, modified to exclude acts in violation of certain regulatory statutes which are punishable as crimes. See Morissette v. United States, 1952, 72 S.Ct. 240.