(May 16, 1902.)

## STATE v. GILBERT.

[69 Pac. 62.]

CRIMINAL LAW—JURY — SPECIAL VENIRE — SUNDAY — MINISTERIAL ACTS.—There is no statute in this state prohibiting secular busi-ness or the performance of ministerial acts by ministerial officers on Sunday, and therefore an objection to the panel of a jury in a criminal action that some of said jurors were summoned under a special venire on Sunday was properly overruled, and such action is not ground for reversing the judgment in a criminal action.

CRIMINAL LAW—MOTION FOR CHANGE OF VENUE—DISCRETION OF TRIAL COURT.—The granting of a change of venue in a criminal action, upon motion of the defendant, is a matter resting largely in the sound discretion of the court, and the denial of such mo-tion will not authorize a reversal of a judgment against the de-fendant where it manifestly appears from the record that the defendant had a fair and impartial trial, and that no trouble was experienced in obtaining an impartial jury.

EVIDENCE—DYING DECLARATIONS—RES GESTAE.—The declaration of the deceased made immediately after he was mortally stabbed by the accused to the effect that he was "stabbed to the heart; that he was dying; and that he was done for," is admissible as a part of the *res gestae,* but the rule would be different if any con-siderable time had elapsed between the affray and the making of such declaration.

(Syllabus by the court.)

APPEAL from District Court, Idaho County.

Goode & McNamee, for Appellant.

Not only the appellant, but the whole community of Idaho county were wronged by the sheriff serving the venire in this case on Sunday—the common law forbids it; the statute for-

bids it. (Rev. Stats., secs. 12, 3866; *State v. Ricketts,* 74 N.
C. 193; 24 Am. & Eng. Ency. of Law, 574 et seq.; *Lempe v.
Manning,* 38 Wis. 673; *Gladwin v. Lewis,* 6 Conn. 49, 16 Am.
Dec. 33; *Pearce v. Atwood,* 13 Mass. 324.) Appellant Gilbert
before the trial began made application for change of venue
under Revised Statutes, section 7768 et seq. The alleged dying
declarations in no sense come within the rule which would
admit them as competent evidence in this case. Some of the
alleged statements were made almost immediately after the
affray by the decedent, such as "I am stuck to the heart," "I
am stabbed twice," "I am killed," etc. To admit dying dec-
larations in cases of this kind has been held erroneous. (*Col-
lins v. Commonwealth* (Ky.), 2 Am. Cr. Rep. 282; *Lieber v.
Commonwealth,* 9 Bush (Ky.), 11.) Expressions of opinion
by deceased, as to the character of the injuries of which he
is dying are inadmissible as dying declarations. (*People v.
Lanagan,* 81 Cal. 142, 22 Pac. 482; *People v. Taylor,* 59 Cal.
650; *People v. Wasson,* 65 Cal. 538, 4 Pac. 555; *State v. Foot
You,* 24 Or. 61, 32 Pac. 1031, 33 Pac. 537.) Where it ap-
pears that the deceased had any expectation or hope of recov-
ery, however slight it may have been, at the time of making al-
leged dying declarations, they are not admissible; on this point
authorities coincide. (*People v. Hodgdon,* 55 Cal. 72, 36 Am.
Rep. 30; *People v. Gray,* 61 Cal. 164, 44 Am. Rep. 549; *People
v. Ah Dat,* 49 Cal. 652.)

Frank Martin, Attorney General, for the State.

The first assignment of error taken up by the appellant is
that the court erred in not sustaining his objection to the panel
of the jurors summoned by special venire, part of which the
record shows were served with notice of their selection as
jurors on Sunday. We desire, however, to call the attention
of the court to one other point in connection with this assign-
ment of error, and that is that under our statute the objec-
tion sought to have been taken by appellant could not have
been sustained and that no error was committed by the court
in denying it. Section 7824 of the Revised Statutes provides

that: "When the panel is formed, or in part formed, from persons whose names are not drawn as jurors, a challenge may be taken to the panel on account of any bias of the officer who summoned them, which would be a good ground of challenge to a juror." It will thus be observed that there is but one ground of challenge provided for by the statute to such a panel and that is "bias of the officer who summoned them." (*People v. Welch,* 49 Cal. 174; *People v. Southwell,* 46 Cal. 141; *People v. Fellows,* 122 Cal. 233, 54 Pac. 830; *People v. Wallace,* 101 Cal. 281, 35 Pac. 862.)

QUARLES, C. J.—The defendant was prosecuted upon the information of the prosecuting or county attorney of Idaho county upon the charge of murder, tried by a jury, and found guilty of murder of the second degree, and duly sentenced to confinement at hard labor in the state penitentiary for life. Thereafter appellant moved for a new trial, which was denied, and he is appealing to this court from an order denying a new trial and from the judgment of conviction.

Appellant has assigned thirty-six errors of law occurring upon the trial and upon the hearing of the motion for a new trial, but in appellant's brief only four or five of these errors are discussed. However, counsel for appellant, in his oral argument at the hearing, expressly stated that appellant did not waive any of the errors assigned. We have carefully examined the record in this case, and have carefully considered each and every of the assignments of error in the record and after such consideration we deem it unnecessary to discuss any of the alleged errors except those which were discussed in the appellant's brief. One of the alleged errors which is seriously discussed at length by appellant is based upon the action of the trial court directing a special venire to issue for forty jurors on the evening of May 4, 1901, said venire returnable on the following Monday morning. It is claimed by the appellant that nine of the forty persons summoned as jurors under said special venire were summoned by the sheriff on Saturday evening, and that the remaining thirty-one were summoned by the

sheriff on Sunday, May 5th, which claim is sustained by the record. Upon the calling of the case, and before any of the said persons so summoned as jurors under said special venire were sworn upon their *voir dire,* counsel for appellant objected to the drawing of any names from the box, or the swearing of any persons as jurors, who were summoned on Sunday, May 5th. This objection was overruled by the court, to which appellant duly excepted. Appellant now contends that the summoning of said persons as jurors on Sunday was a judicial act, and as such prohibited by the provisions of sections 12 and 3866 of the Revised Statutes. Said section 12 has no application whatever to the question before us. Section 3866 is as follows: "No court can be opened nor can any judicial business be transacted on Sunday, on the first day of January, on the fourth day of July, on Christmas or Thanksgiving Day, or on a day on which the general election is held, except for the following purposes: 1. To give, upon their request, instructions to a jury when deliberating on their verdict; 2. To receive a verdict or discharge a jury; 3. For the exercise of the powers of a magistrate in a criminal action or in a proceeding of a criminal nature; provided, that in civil causes orders of arrest may be made and executed; writs of attachments, executions, injunctions and writs of prohibition may be issued and served; proceedings to recover possession of personal property may be had; and suits for the purpose of obtaining any such writs and proceedings may be instituted on any day." It has been held by this court that the service of legal process upon Sunday is a ministerial, and not a judicial, act, and therefore not prohibited by the provisions of section 3866. (See *Havens v. Stiles* ante, p. 250, 67 Pac. 919, and authorities there cited.) The question arose in *Havens v. Stiles, supra,* in regard to the filing of a civil complaint and issuing summons thereon; but those acts, like the one in question here, are ministerial, and, while as a question of morals and Christian ethics should not be performed on Sunday, yet we have no statute in this state prohibiting secular business or prohibiting the performance of purely ministerial acts by ministerial officers; hence the alleged

assignment of error cannot be treated as sufficient ground for a reversal of the judgment in this case.

Before the trial the defendant moved for a change of venue upon the ground of bias and prejudice against the defendant. This motion was denied by the court, and we are now asked to hold that this action of the court was error prejudicial to the defendant, and such as demands a reversal of the judgment of conviction. The granting or refusing to grant a change of venue is a matter largely within the discretion of the trial court, and the denial of the motion for a change of venue cannot be the basis for a reversal of the judgment of conviction, where it manifestly appears from the record that the defendant can have and did have a fair and impartial trial, and no trouble was experienced in obtaining a jury. An examination of the record convinces us that defendant did have a fair and impartial trial, and, while the evidence is somewhat conflicting, the evidence introduced at the trial was sufficient to authorize and support the verdict of the jury.

The defendant contends that the court erred in instructing the jury as to what constitutes reasonable doubt. This instruction is like many others upon the same point heretofore considered by this court. The instruction complained of is as follows: "The term 'reasonable doubt' does not mean a vague or shadowy doubt. A reasonable doubt is one which has some reason for its basis. It is a doubt which a juryman can give a reason for. You should not go beyond the evidence to hunt for doubt. A doubt to justify an acquittal must be reasonable, and arise from a candid and impartial consideration of the evidence. It should be such a doubt as would cause a reasonable, prudent, and considerate man to hesitate and pause before acting in the graver and more important affairs of life." The defendant contends "that under this instruction the state need only prove by a preponderance of evidence in order to convict the appellant, whereas in fact there must be an abiding conviction to a moral certainty of the truth of the charge, and the jury must be entirely satisfied of the guilt of the accused." This instruction of the court informed the jury that they must

believe from the evidence beyond a reasonable doubt that the defendant was guilty before they could convict him. We find no error in the instruction complained of.

The appellant also complains of the following instruction given by the trial court to the jury: "The jury should commence the investigation of this case with the presumption that the defendant is innocent of the crime with which he is charged, and you should act upon this presumption throughout your consideration of the evidence, unless it shall have been overcome by evidence of guilt so strong and credible and conclusive as to convince your minds, beyond a reasonable doubt, that the defendant is guilty. This rule of law, which clothes every person accused of crime with the presumption of innocence, and imposes upon the state the burden of proving his guilt beyond a reasonable doubt, is not intended to aid anyone who is in fact guilty to escape, but is a just and humane provision of law, intended to be construed by the jury in a common-sense manner, and to guard against the liberties of a person being wrongfully taken away from him, or against a person being wrongfully punished." We do not see how the appellant was prejudiced by this instruction.

One of the witnesses for the state—Peter Olsen—was alleged to be incompetent upon the ground that he was insane, and the trial court was asked to examine into the insanity of said witness, but refused to hold such inquisition. It appears that the insanity of such witness was examined into by the probate court upon the testimony of four examining physicians, and he was found to be sane. It was not error to permit said witness to testify on behalf of the state.

The appellant contends that it was prejudicial error to permit in evidence the testimony of witnesses proving the dying declarations of the deceased, made immediately after the affray, to the effect that he was "stabbed to the heart, that he was dying, and that he was done for." The evidence shows that deceased had a large wound inflicted in his side with a knife, and that his entrails and a portion of one of his lungs was protruding therefrom. This declaration, being made at

the time of the homicide, was a part of the *res gestae,* and we do not see how the appellant was prejudiced by said testimony. The rule perhaps would be different if any considerable portion of time had elapsed between the time of the difficulty and the making of such declaration. Finding no reversible error in the record, the order denying a new trial and the judgment of conviction appealed from are affirmed.

Sullivan and Stockslager, JJ., concur.