(No. 6611.   October 10, 1939.)

STATE, Respondent, v. CLARENCE CRANER and MEL-
VIN CRANER, Appellants.

[94 Pac. (2d) 1081.]

Bert H. Miller and Ariel L. Crowley, for Appellants.

J. W. Taylor, Attorney General, and R. W. Beckwith, Assistant Attorney General, for Respondent.

GIVENS, J.—Appellants were convicted of the larceny of a calf.

Their first assignment of error challenges Instruction No. 14[1] which is almost identical with the instruction held cause for reversal in *State v. Hix,* 58 Ida. 730, 78 Pac. (2d) 1003, and *State v. Taylor,* 59 Ida. 724, 87 Pac. (2d) 454,

---

[1] Instruction No. 14:

"The jury is instructed that the evidence need not demonstrate the guilt of the defendants beyond the possibility of their innocence; and if the circumstances as proved produce a moral conviction to the exclusion of every reasonable doubt they need not be absolutely incompatible, on any reasonable hypothesis with the innocence of the

and embodies all the vices of the similar instruction condemned in *State v. Cox*, 55 Ida. 694, 46 Pac. (2d) 1093.

The attorney general admits the instruction is erroneous but asserts it was not prejudicial because "if the jury considered all of the instructions as they should do, they could not have but presumed that the defendants were innocent unless the evidence taken as a whole satisfied the jury beyond a reasonable doubt of the defendants' guilt. . . . . " and that if the evidence of guilt was so conclusive that the jury could not have returned a verdict of not guilty without violating their oath then the giving of the erroneous instruction does not warrant a reversal of the conviction.

In *State v. Taylor*, 59 Ida. 724, 734, *supra*, this court in considering the above contention said:

" . . . . this rule has been and should be guardedly applied, otherwise art. 1, sec. 7, guaranteeing the right to trial by jury, which means a jury which has not been misled by erroneous instruction to a defendant's prejudice, will be violated."

accused. The value of circumstances as evidence depends upon the degree of certainty with which they point to a particular conclusion. While such evidence to be sufficient must create more than a suspicion of guilt, a mere possibility of innocence will not prevent a conviction where the conclusion or inference of guilt is logical. A theory of innocence must be rational and must find support in facts. You are not required to adopt an unreasonable theory or one not fairly founded upon evidence. You are not required to give to circumstances a strained or artificial construction in determining whether they are consistent with innocence.

"Circumstantial evidence alone will support a conviction, if it produces a belief beyond a reasonable doubt in the minds of the jury that the accused is guilty, and the conclusion of guilt need not necessarily follow from the circumstances in proof but may be obtained therefrom by probable deductions. The evidence need not demonstrate the guilt of the defendants beyond the possibility of their innocence, and if the circumstances as proved produce a moral conviction to the exclusion of every reasonable doubt, they need not be absolutely incompatible, on any reasonable hypothesis with the innocence of the accused. If, however, you can reconcile the entire evidence as equally consistent with the theory of the defendants' innocence as well as with the theory of the defendants' guilt, you will return a verdict of not guilty."

Without discussing the evidence, because the case is remanded for a new trial, it was entirely circumstantial and not so conclusive of guilt, giving full force and effect to the attorney general's contention (without approval or disapproval thereof) as to bring this case thereunder.

■■ Appellants contend the court should have instructed on the claimed included offenses of slaughtering unbranded neat cattle (sec. 24–1606, I. C. A.) and maliciously killing an animal the property of another (sec. 17–4202, I. C. A.).

*State v. Hix, supra,* at page 739, of the Idaho Reports, cited in support of this contention, is distinguishable. There the offense charged was murder in the first degree and it was held error not to give instructions permitting conviction of murder in the second degree and manslaughter. As stated therein ''every charge of murder necessarily includes the offense of murder in the first degree, murder in the second degree and manslaughter.'' Murder in the first degree cannot be committed without commission at the same time of the offenses of murder in the second degree and manslaughter. In the case at bar appellants were charged with larceny of a calf. The offense could have been completed without the commission of the offenses of slaughtering unbranded neat cattle or maliciously killing an animal the property of another. The fact that the evidence tended to show a violation of either or both secs. 24–1606 and 17–4202, I. C. A., does not make them necessarily included offenses in the crime of larceny of a calf. No error is committed by the omission to charge on a particular point not necessarily an ingredient of the offense otherwise sufficiently alleged, in the absence of a request thereon. (*State v. Patterson,* 60 Ida. 67, 88 Pac. (2d) 493.)

Judgment reversed and cause remanded for a new trial.

Ailshie, C. J., and Morgan and Holden, JJ., concur.

BUDGE, J., Dissenting.—The following statement of facts recited in the brief of the attorney general appears to be in all respects substantially correct and is adopted and approved as a statement of the material facts disclosed by the record:

"Appellants were convicted of grand larceny of an unbranded Hereford calf, and sentenced to serve a term of not less than one nor more than fourteen years in the Idaho State Penitentiary, from which judgment of conviction this appeal is made.

"The evidence establishes that the two appellants were in the vicinity of where the crime was committed on September 15, 1937, the date thereof. Shortly before the calf was discovered by the state's witnesses the appellants stopped at the E. R. A. camp and at that time had no large object in their truck. At this time the endgate in appellants' truck was up, but when the truck was stopped a little past seven o'clock P. M. at Steinson Creek where the calf was found dead, the endgate on appellants' truck was down. The appellants passed the witness Wallace Averill on his way to a forest ranger station while he was leading two horses behind his truck. Fifteen or Twenty minutes after Averill arrived at the ranger station he and the other witnesses accompanying him in his truck heard a shot from a rifle coming from the direction of Flat Creek which was a quarter of a mile distant by airline and approximately three-quarters of mile by the road. This was between seven and seven-thirty o'clock in the evening. In order to investigate the shot Averill and the other witnesses accompanying him in his car drove to the mouth of Flat Creek Canyon, at which place the appellants passed him going out of the canyon at a fast rate of speed with an object in the rear of their truck which looked like a deer. The road leading up Flat Creek canyon was not in the direction of appellants' sheep camp. Averill turned around in the road and followed the appellants about one mile to a place in the road where the road going to the Craner ranch crosses Steinson Creek, at which place, when Averill drove up and stopped, the appellants' car was across the creek about thirty feet, stopped, with the motor running standing in the road, and Melvin Craner was running toward the Craner truck and attempted to flip a long wool sack into the back of the pickup. He appeared to be nervous and fumbled around trying to get the door open and get into the car. Averill hollered for Craner to stop, but they did not and when Melvin got into the pickup

they drove away toward their ranch. Averill and witnesses with him found the Hereford bull calf, about three or four months old, not branded, and not weaned, lying about thirty feet from where Craner's car had stopped with blood from where the back of the car was to where the calf was lying with its throat cut and a bullet wound over its left eye in front of the head. It was warm at this time, showing that it had been very recently killed. The brush was crushed down and blood was smeared on the ground and brush where the calf had been dragged from the place where the Craner car had stopped to where the calf was on the ground when found. The calf was put into the forest service truck and taken to a neighboring ranch by the forest ranger Averill and the other witnesses. The windows in the cab of the Craner pickup truck were open. The speed with which the Craner car passed Averill aroused his suspicion.

"Witness Beecher, the following day, on September 16, with the others, drove up Flat Creek canyon about a mile following car tracks to where a car had turned around in the road. There they discovered a Hereford cow belonging to Beecher with a full bag standing bawling. The tire tracks went from the road to a large pool of blood in the sage-brush. These tire tracks had on the left rear a mountain grip, knobby tread, and the right rear a diamond tread. There were men's tracks around this blood pool, approximately of a half bucket of blood and the cow was standing about one hundred yards away bellowing for her calf. The car had backed up to the blood stain, and the sheriff checked the tires on the appellants' car and discovered that a mountain grip knobby tire was on the left rear wheel and a diamond tread tire on the right rear wheel, shortly after the calf had been killed. On September 16, the deputy sheriff found a Winchester rifle in Craner's house, the owner-ship of which was claimed by one of the appellants. In this rifle was a discharged shell which was jammed in the chamber. The bullet taken from the head of the calf was admitted in evidence. All of this evidence was undisputed and uncontradicted. The defense offered no testimony what-ever, and, of course, plead not guilty, which put in issue all of the material allegations in the information."

The judgment of conviction of appellants is reversed for the sole reason that the trial court gave to the jury what is designated as Instruction Number 14, set out in full as a note to the majority opinion.

Conceding that the instruction is erroneous, the question arises: Were the appellants prejudiced or denied any substantial right by the giving of the instruction complained of, in the light of the evidence disclosed by the record? An instruction may be erroneous and still not be prejudicial. It is a fundamental rule in this jurisdiction that prejudicial error must be proven and not presumed; it must affirmatively appear from the record that the error complained of was of a character sufficient to show that appellant was not given a fair trial. (*State v. McLennan*, 40 Ida. 286, 231 Pac. 718.) Likewise, error in an individual instruction is without prejudice where the same has been corrected by other instructions or when all of the instructions given, read and considered as a whole correctly state the law. In *State v. Corcoran*, 7 Ida. 220, 61 Pac. 1034, it is said:

"The instructions, taken as a whole, informed the jury that they must find from the evidence, beyond a reasonable doubt, that the defendant acted knowingly and with guilty purpose and intent, and excluded the idea that they could convict because he innocently aided in the perpetration of a crime. While the instructions complained of are in part erroneous, yet no substantial right of the defendant was prejudiced. The instructions taken as a whole, fairly gave the jury the whole law of the case."

This court is admonished by section 19–2719, I. C. A., to disregard technical errors, the statute providing that:

"After hearing the appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

The purpose of section 19–2719, I. C. A., is to admonish the courts in criminal procedure that errors or mistakes which do not tend to prejudice the substantial rights of the defendants should be disregarded. (*State v. Hunsaker*, 37 Ida. 413, 216 Pac. 721.)

In *State v. Marren*, 17 Ida. 766, 107 Pac. 993, it is held:

"but the evidence in this case is so clear and convincing of the guilt of the appellant that the jury could in no possible manner have been influenced to return a verdict of guilty by the objectionable matter contained in this instruction; and from the evidence, the jury could not, without a violation of their oaths, fail to have found the defendant guilty, and because of this, the defendant could not have been prejudiced by the giving of such instruction."

The record in this case discloses beyond controversy the guilt of the defendants as charged in the information. Even though the instruction complained of may be said to be erroneous, it was not prejudicial because the evidence of guilt is so clear and convincing that the jury could not have failed to convict defendants without its members violating their oaths. (*State v. Orr*, 53 Ida. 452, 24 Pac. (2d) 679; *State v. Bond*, 12 Ida. 424, 86 Pac. 43; *State* v. *Marren, supra; State v. Dong Sing*, 35 Ida. 616, 208 Pac. 860; *State v. Silva*, 21 Ida. 247, 120 Pac. 835; *State v. Brill*, 21 Ida. 269, 121 Pac. 79; *State v. Jester*, 46 Ida. 561, 270 Pac. 417; *State v. Terry*, 50 Ida. 283, 295 Pac. 427.)

Instructions numbered 12, 13, and 17, as well as all of the instructions given by the court, when considered as a whole correctly state the law and render the error complained of in instruction No. 14 without prejudice, and the giving of said instruction did not deprive appellants of any substantial right.

The judgment should be sustained for the reason that no prejudicial error was committed by the trial court in giving the instruction complained of. Appellants were not deprived of any substantial right and were afforded a fair and impartial trial, the evidence establishing their guilt beyond a reasonable doubt.