191 P.2d 364

**STATE v. DICKENS et al.**

No. 7402.

Supreme Court of Idaho.

March 10, 1948.

Frank Langley, of Boise, for appellant Dickens. Delana & Delana, of Boise, for appellant Lloyd.

MILLER, Justice.

December 27, 1946, an information was filed in the District Court of the Third Judicial District of Idaho, in and for the County of Elmore, in which Guy Dickens and Dan Lloyd were accused of the crime of grand larceny, to-wit, "That the said Guy Dickens and Dan Lloyd, on or about the 1st day of August, 1946, within three years of the filing of this information and prior to the filing of this information, near Mountain Home, in the County of Elmore, State of Idaho, then and there being, did then and there wilfully, unlawfully, intentionally and feloniously steal, take and drive away one white-faced Hereford calf which said calf was then and there the property of Green Hall and George Rosevear."

April 21, 1947, the case came on for trial and on April 23rd the jury returned a verdict finding the defendants guilty of grand larceny as charged in the information. April 28, 1947, Dan Lloyd was sentenced to serve a term in the State's prison of not less than one nor more than 14 years and the defendant Guy Dickens was sentenced to serve a term in State's prison for the term

of not less than eighteen months nor more than fourteen years. April 29, 1947, Dan Lloyd filed his notice of appeal from the judgment theretofore entered and on May 14, 1947, Guy Dickens filed his notice of appeal from the judgment theretofore entered. Both defendants obtained certificates of probable cause for their respective appeals and each gave a supersedeas bond in the sum of $1,000. The appellant, Dan Lloyd became a witness in his own defense, but appellant Guy Dickens did not avail himself of that privilege.

We refrain from commenting on the character of the evidence, or, as to the sufficiency thereof to support the judgments. On account of errors arising during the course of the trial the case must be remanded for a new trial and it is for that reason we deem it inadvisable to comment on the evidence or testimony adduced.

Assignment of error No. 1, asserts that the trial court erred in denying appellant, Dan Lloyd's challenge to the juror Blackstein. The examination disclosed that Blackstein had discussed the case with Green Hall, the complainant, and with his father and that he coincided with the views entertained by said Hall and his father. He had formerly worked for Mr. Hall, had heard statements of the facts from people that claimed to know the facts and had an opinion that would take evidence to remove.

"Q. At this time you are in favor of the things that Mr. Green Hall expressed to you? A. Yes sir.

"Q. And it would take evidence to remove that opinion, wouldn't it? A. Yes, sir.

"Q. In other words, you start out the case here with an opinion in your mind that the other side would have to introduce evidence to remove? A. That's right.

\* \* \* \* \* \*

"Q. And did your father express an opinion also? A. Well, he made something of it, yes.

"Q. And your father expressed an opinion when he was talking to you? A. Yes.

"Q. That opinion also coincided with Mr. Green Hall? A. Yes, I think so.

\* \* \* \* \* \*

"Q. And at this time you have an opinion based upon what Mr. Hall, Green Hall, told you and also upon the discussion with your father? A. Yes.

"Q. And you and your father join in the same opinion? A. Yes we talked about it.

"Q. And it would take evidence to remove that opinion? A. I believe it would.

"Mr. Delana: Challenge the juror for having an opinion affecting the merits of this case.

"The Court: How about the state?

"Mr. Hall: We resist the challenge, your Honor.

"The Court: The challenge is denied."

The state of mind of said juror undoubtedly was such as to amount to actual bias. The challenge interposed that the juror had an opinion affecting the merits of the case is not in statutory form but we think that fact would not warrant the trial court in decisively denying said challenge. It was manifestly apparent from the examination of said juror that he could not be such a fair and impartial juror as is contemplated. A defendant in a criminal action should not be put to the necessity of using a peremptory challenge when it clearly appears the prospective juror is disqualified for cause.

50 C.J.S., Juries, § 240, announces the rule as follows:

"Ordinarily it is held that a juror is incompetent, although he states that he can render an impartial verdict, if he has formed an opinion from conversing with witnesses in the case, particularly where he is a personal friend of the witness; and under some statutes an opinion so formed is a ground of exclusion."

In the case of People v. Weil, 40 Cal. 268, it is said:

"The ruling of the Court, in disallowing the defendant's challenge of the proposed juror after his answers to questions, as above recited, in my judgment, was clearly erroneous. * * *

"Thus it plainly appears, that the practical result of the disallowance by the court of defendant's challenge for cause of Riley Senter, was to contract the number of peremptory challenges to which he was entitled, and that such an error may have been seriously prejudicial to defendant."

Assignment of error No. 2, was an objection by appellant Lloyd to the introduction of State's Exhibit No. 2, which was a brand inspection certificate. The objection was on the ground that the same was not an original, nor a certified copy, nor a carbon copy, nor a copy at all and that no proper foundation was laid and that the same was hearsay. Under the circumstances it was error to admit the same in evidence as it was not a certified copy thereof.

Assignment of error No. 3, was an objection to the cross-examination of Dan Lloyd by the prosecuting attorney and in which appellant Lloyd was asked about statements made by appellant Dickens months previously in an action against Dickens regarding an iron that was used to brand a certain cow. In his direct examination appellant Lloyd was not asked, nor did he testify relative to said matter. The objection made was that it was not proper cross-examination, that it was leading, suggestive and that no proper foundation was laid and that it called for a conclusion. It must be remembered that appellant Dickens was not a witness in his own behalf in the instant case.

Irrespective of other objections interposed it was improper cross-examination. It had no relation to the guilt of the

defendants as the method and manner by which any brand was placed upon a cow was not a part of the charge in the information and in nowise could be used to identify the calf alleged to be the subject of the larceny. Regardless of the amount of proof that could be produced or amassed as to the kind of iron used in branding the cow it would not be competent proof to establish the guilt of the defendants.

Section 19-2903, I.C.A., is as follows:

"A defendant in a criminal action or proceeding to which he is a party, is not, without his consent, a competent witness for or against himself. His neglect or refusal to give such consent shall not in any manner prejudice him nor be used against him on the trial or proceeding."

In the case of State v. Larkins, 5 Idaho 200, 212, 47 P. 945, 948, the question as to the extent to which cross-examination of a defendant may extend, on rehearing, modified the original opinion and held:

"Under this rule, the defendant in a criminal action, who has testified in his own behalf, can only be cross-examined by the state as to the facts stated on his direct examination, or connected therewith."

Said examination constituted error.

■ Assignment of error No. 4, shows that the prosecuting attorney asked the witness Green as to what Dickens testified to in a lower court at the Dickens trial as to the manner of branding the cow. The questions and answers are as follows:

"Q. Did he say how it was branded? A. Yes, he said with just some irons. He didn't have a branding iron, and that he just picked up some iron and branded her.

"Q. That is probably known as a running iron, an instrument used like that—is that right? A. Well, from my understanding of a running iron, why, that is what it would be called."

In the case of State v. Carter, 21 N.M. 166, 153 P. 271, 272, a case in which the state examined the witness as to what an absent witness had testified at the preliminary examination, and in which, among other things, it is said:

"Applying the foregoing rules to the facts of this case, can it be said that the reference to the alleged testimony of the witness Burke at the preliminary hearing was admissible as a test of the accuracy and credibility of the witness Joiner? We think not, but that, on the contrary, the cross-examination of the witness Joiner was permitted to proceed beyond the bounds which are proper to test the accuracy and credibility of a witness, with the sole purpose in view, so far as the record discloses, of bringing about the presentation to the jury of the evidence of the absent witness, which evidence had been excluded, and was clearly inadmissible under the conditions applying to its tender." See also, State v. Branch, 66 Idaho 528, 164 P.2d 182.

The examination was objected to as leading, suggestive and no proper foundation laid and called for the conclusion of the

witness. The objection urged was proper, and it was error to allow the examination.

■ The giving of instruction No. 5 as follows:

"Now, in the case before us the defendants admit that they have in their possession the white-faced Hereford calf which Green Hall and George Rosevear claim is their property. They contend that the calf is their own property; and that it is the offspring of a cow owned by them, and which was so owned by them, when she gave birth to the said calf. * * *" was assigned, by appellant Dickens, as error on the grounds that it invaded the province of the jury.

53 Am.Jur. p. 144, Sec. 159, states:

"In jury trial cases it is the sole peculiar province and function of the jury to determine or decide disputed claims and questions of fact arising in the case before it, and the law does not countenance any invasion or usurpation by the court of this province and function of the jury to weigh the evidence and find the facts. The jury have a right to draw from proved circumstances such conclusions as are natural and reasonable."

And, at Sec. 584 of said volume, among other things, it is said:

"The respective functions of the court and jury in the trial of cases, civil and criminal, are separate and distinct. The fundamental rule that no encroachment by the court upon the province of the jury, which is to determine the facts of the case, can be tolerated, must be observed by the court in charging the jury. It is the duty of the court so to frame its charge to the jury as to submit questions of fact solely to the decision of the jury, deciding on and instructing them as to the law relating thereto, and distinctly separating the questions of law from those of fact."

The giving of instruction No. 5 constituted reversible error.

■ Under instruction No. 7, the trial court instructed on reasonable doubt, as follows:

" * * * And the law goes further and defines the measure of proof that is necessary in order to prove them guilty. The law says they are not proved guilty unless they are proved guilty beyond a reasonable doubt. If a reasonable doubt of guilt remains, then they are entitled to the benefit of that doubt and to an acquittal.

"Now, in considering this rule of law, you must not forget the word 'reasonable.' That is just as important as the word 'doubt.' The law does not say that a man must be proved guilty beyond every imaginable doubt or every conceivable or possible doubt. No case can be proved to that extent. The human mind can imagine a doubt on almost any topic, and if the law said you had to prove a case beyond every imaginable doubt, there might as well be no courts. In other words, the law does not say that a defendant's guilt must be

proved to a mathematical certainty, because in courts and cases that depend upon human memory and recollection you can not have mathematical certainty. It is, however, possible to make it reasonably certain that a man is guilty; it is possible to remove a reasonable doubt, and that is what must be done before a defendant can be found guilty.

"The word 'reasonable' has no mysterious meaning. It means in its use here just what it means anywhere. A reasonable doubt is a doubt founded on reason. It is not founded on any wild surmising or guesswork, or on sympathy; it is not subterfuge for a juror to resort to to avoid doing a disagreeable duty; but it is just what the word means: a doubt founded on reason; a doubt for which the holder can give a good reason. It is such a doubt, and only such a doubt, that entitles a defendant to an acquittal.

"If the evidence in the case has made it reasonably certain that the defendants are guilty, then they have been proved guilty beyond a reasonable doubt, and they must be convicted. On the other hand, I repeat, if there is a reasonable doubt of their guilt of the charge against them, then they are entitled to the benefit of that doubt, and to an acquittal."

The foregoing instruction is confusing, argumentative and prejudicial and has repeatedly been held to constitute reversible error.

Amendment VI of the Federal Constitution, among other things, provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law. * * *"

Section 7, art. 1, of the state constitution, provides for a trial free from prejudicial error, and in the case of State v. Lundhigh, 30 Idaho 365, 164 P. 690, 697, in the concurring opinion, it is said:

"Furthermore, the right to trial by jury mentioned in sec. 7, art. 1, of the Constitution means a trial free from prejudicial error by a jury which has not been misdirected by the court as to the law governing the case. Such a trial is guaranteed alike to the innocent and the guilty, and it is not within the province of this court to condemn a man who has not been properly convicted by a tribunal having jurisdiction to determine the facts."

Volume 53 Am.Jur. p. 431, sec. 533, among other things, says:

"A charge to a jury should, if possible, be concise, plain, simple, and easily understood. It should be couched in clear, intelligible language, and such in its language and meaning as may be readily applied by the jury to the evidence. * * * An instruction should be so clear and concise as to be readily within the comprehension of men such as jurors who are not ordinarily

educated in the law. If it is so worded that it might convey to the mind of an unprofessional man of ordinary capacity an incorrect view of the law applicable to the case, it is erroneous."

In Sec. 540 of said volume, among other things, it is observed:

"The trial court's obligation to conduct a trial with the utmost impartiality and fairness extends to the giving of instructions to the jury." See Morse v. Ward, 102 Vt. 433, 150 A. 132.

In the case of State v. Bubis, 39 Idaho 376, 227 P. 384, it appears that the instruction on "reasonable doubt," reported at page 382 of 39 Idaho, page 385 of 227 P., is the complete instruction, but a reference to the transcript discloses there was more to the instruction, and which is as follows:

"A reasonable doubt is an actual doubt based upon the evidence, or lack of evidence, and upon reason that you are conscious of after going over in your minds the entire case, giving consideration to all the testimony. If you then feel uncertain and not fully convinced that the defendant is guilty, or if you feel that you would not be acting reasonably should you find him guilty, and if you believe that a reasonable man in any matter of like importance in his own affairs would hesitate to act because of such a doubt as you are conscious of having, then that is a reasonable doubt and the defendant is entitled to the benefit of it. But, if after considering all the evidence you have an abiding conviction of the truth of the charge, then you are convinced beyond a reasonable doubt and should return you verdict accordingly."

On appeal an objection was urged that a juryman might have a doubt for which it might be difficult or impossible to assign any reason and this court said:

"Surely, however, he would be conscious of some reason; that is to say, a verdict should be based upon the operation of mental processes and the exercise of judgment. That this language is not prejudicial error, see State v. Gilbert, supra; [8 Idaho 346 at 351, 69 P. 62, 1 Ann.Cas. 280]; State v. Moon, 20 Idaho 202, 117 P. 757, Ann.Cas. 1913A, 724; State v. Nolan, 31 Idaho 71, 169 P. 295.

"We find no reversible error in the record. * * *"

In the case of State v. Gilbert, supra [8 Idaho 346, 69 P. 64], among other things, it is said:

"This rule of law, which clothes every person accused of crime with the presumption of innocence, and imposes upon the state the burden of proving his guilt beyond a reasonable doubt, is not intended to aid any one who is in fact guilty to escape, but is a just and humane provision of law, intended to be construed by the jury in a common-sense manner, and to guard against the liberties of a person being wrongfully taken away from him, or

against a person being wrongfully punished."

In the case of State v. Moon, 20 Idaho 202, 117 P. 757, 761, Ann.Cas.1913A, 724, a lengthy instruction upon "reasonable doubt" was given. Defendant assigned as prejudicial the use in said instruction of the following language:

" 'You are not at liberty to disbelieve as jurors if from the evidence you believe as men. The oath which you have taken imposes upon you no obligation to doubt when no doubt would exist if no oath had been administered.' "

This court then observed:

"The employment of such language in this regard seems to have arisen from its sanction in an early Pennsylvania case. Commonwealth v. Harman, 4 Pa. [269], 273. In a later case from the same state (Fife v. Commonwealth, 29 Pa. [429], 439) the court said, in commenting upon an instruction similar to the language here objected to, as follows:

" 'It must be remembered that jurors are men, and that it is because they have human hearts and sympathies and judgments that they are selected to determine upon the rights of their fellow men. If they were more or less than men, they would not be the constitutional peers of the prisoner, and would be disqualified to decide his cause. The term "jurors" means nothing more than twelve men qualified and sworn to try a cause according to the evidence. Their

oaths as jurors rest on their consciences as men, and as men they are accountable to God and their country for their verdict. Nothing more is demanded of them as jurors than an honest exercise of their judgment as men. The evidence which produces conviction on their minds in one capacity works the same result in another. Their belief is the same in both.' Nevling v. Commonwealth, 98 Pa. [322], 334."

The foregoing observation, as therein recited, is that jurors ordinarily are capable of determining what constitutes reasonable doubt. This court held that the instruction given in the case of State v. Moon, supra, should be sustained.

In State v. Nolan, supra [31 Idaho 71, 169 P. 298], this court quotes the instruction given on reasonable doubt in its entirety and then says:

"This instruction was approved by this court in State v. Lyons, 7 Idaho 530, 64 P. 236, and State v. Moon, supra. While the instruction may properly be subjected to some criticism and many courts have condemned it, its giving has not generally been regarded, even in the jurisdictions where it has been condemned, as sufficient of itself to amount to prejudicial or reversible error. [Citing numerous authorities] In the latter case, however, Hamer, J., wrote a strong dissenting opinion, in which he argued that the instruction should be regarded as prejudicial error. [Citing authorities] The Wisconsin case, [Mc-

_Allister v. State, 112 Wis. 496, 88 N.W. _212] cited above, attempts to draw a serious distinction between the words 'graver transactions of life' and the words 'important affairs of life.' We are unable to follow the reasoning of the Wisconsin court on this point. In the McQueary Case, [McQueary v. People, 48 Colo. 214, 110 P. 210, 21 Ann.Cas. 560] above cited, the Supreme Court of Colorado used this language: 'In sustaining the instruction, however, we do not wish to be understood as commending it. On the contrary, we regard it as useless, because it conveys no information which men of ordinary intelligence do not already possess, and is subject to the criticism made by the Supreme Court of California, in People v. Whitney, 53 Cal. 420, wherein it was said, in speaking of a similar instruction: "It is not to be presumed that jurors would, from the charge of the court, the arguments of counsel, or anything transpiring at the trial, entertain the idea that in becoming jurors they had ceased to be men, or had acquired any new capacity by which they might test the truth of evidence; it was, therefore, as unnecessary to instruct them that a juror has no right to disbelieve the evidence as a juror while he believes it as a man, as it would have been to charge them that in becoming jurors they had not lost the capacity, which they possessed as men, to distinguish truth from falsehood or mistake." ' "'

It should be noted the amount of time, energy and expense involved in the retrial of comparatively recent criminal cases, because of reversals predicated upon erroneous instructions.

In the case of State v. Craner, 60 Idaho 620, 94 P.2d 1081, this court said:

"Their first assignment of error challenges Instruction No. 14 which is almost identical with the instruction held cause for reversal in State v. Hix, 58 Idaho 730, 78 P.2d 1003 and State v. Taylor, 59 Idaho 724, 87 P.2d 454, and embodies all the vices of the similar instruction condemned in State v. Cox, 55 Idaho 694, 46 P.2d 1093."

The Attorney General admits the instruction is erroneous, but asserts it was not prejudicial, and he then endeavors to justify his contention.

In State v. Taylor, supra [59 Idaho 724, 87 P.2d 460], this court in considering the above contention said:

" * * * this rule has been and should be guardedly applied; otherwise Art. 1, Sec. 7, guaranteeing the right to trial by jury, which means a jury which has not been misled by erroneous instructions to a defendant's prejudice, will be violated."

The judgment was reversed and the cause remanded for a new trial.

Likewise, in State v. Taylor, supra, the court instructed on reasonable doubt, as follows:

" 'But you are instructed that the evidence need not demonstrate the guilt of the defendant beyond the possibility of his in-

nocence; if the circumstances proved produce a moral conviction to the exclusion of every reasonable doubt, they need not be absolutely incompatible, on any reasonable hypothesis, with the innocence of the accused. While such evidence to be sufficient, must create more than a suspicion of guilt, a mere possibility of innocence will not prevent a conviction where the conclusion or inference of guilt is logical. A theory of innocence must be rational and must find its support in facts. You are not required to adopt an unreasonable theory or one not fairly founded on evidence. You are not required to give to circumstances a strained or artificial construction in determining whether they are consistent with innocence.' "

Said instruction was condemned in State v. Hix, supra, and the judgment was reversed and the cause remanded. In State v. Hix, supra [58 Idaho 730, 78 P.2d 1008], the trial court instructed on reasonable doubt, as follows:

" 'But you are instructed that the evidence need not demonstrate the guilt of the defendant beyond the possibility of his innocence; *if the circumstances proved produce a moral conviction to the exclusion of every reasonable doubt.* THEY NEED NOT BE ABSOLUTELY INCOMPATIBLE, ON ANY REASONABLE HYPOTHESIS, WITH THE INNOCENCE OF THE ACCUSED. *While such evidence, to be sufficient, must create more than a suspicion of guilt, a mere possibility of in-*

*nocence will not prevent a conviction where the conclusion or inference of guilt is logical. A theory of innocence must be rational and* MUST FIND ITS SUPPORT IN FACTS. *You are not required to adopt an unreasonable theory or one* NOT FAIRLY FOUNDED ON EVIDENCE. You are not required to give to circumstances a strained or artificial construction in determining whether they are consistent with innocence.'

"The italicized portions of the foregoing instruction are peculiarly confusing and the capitalized portion is clearly prejudicial. The instruction as a whole would most likely lead a jury to conclude that there must be *some evidence* in the case, either on the part of the defendant or by the state, which raises the 'inference' and gives rise to the 'conclusion' that the defendant is not guilty; in other words, that the defendant's 'theory of innocence must be rational and must find its support *in facts or* * * * on evidence.' Whereas, the law allows a defendant to rest upon the lack of evidence on the part of the state to prove him guilty and the primary inferences are that he is innocent."

Assignments of error No. 6–(A) and No. 6–(B & C) have to do with the insufficiency of the evidence.

We have quoted instructions on reasonable doubt quite fully, and it occurs to us that the instruction in State v. Bubis, supra, covers all that need be said to a jury on reasonable doubt. If the giving of such an in-

struction were adhered to many criminal cases would not be reversed because of prejudicial error in instructions.

For the reasons herein mentioned the judgments are reversed and the action remanded with directions to grant a new trial.

HOLDEN and HYATT, JJ., concur.

GIVENS, C. J., and SUTPHEN, District Judge, concur except as to Assignment No. 3.