**Warren ELSWICK, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

July 21, 1978.

Discretionary Review Denied Jan. 9, 1979.

Max M. Smith, Frankfort, W. Sidney Trivette, Pikeville, for appellant.

John Paul Runyon, Commonwealth Atty., Pikeville, Robert F. Stephens, Atty. Gen., Barbara Barnstable Edelman, Asst. Atty. Gen., Frankfort, for appellee.

Before MARTIN, C. J., and HAYES and WINTERSHEIMER, JJ.

MARTIN, Chief Judge.

Warren Elswick was convicted in the Pike Circuit Court of promoting prostitution in the second degree. He was sentenced to the penitentiary for a term of four years. Elswick's arrest was an event of substantial proportion, and was widely reported in the local newspapers and on radio stations. At trial the Commonwealth proved that the appellant had started his operation as a small massage parlor near the outskirts of town. As his business expanded, he moved to the center of Pikeville in a facility known as the Hopkins Building. The adult activity center located in Room 303 of this building was the hub of the prostitution activities. The evidence established that the advertised massages were merely a cover-up for a fairly sophisticated prostitution operation. Witnesses hid in closets and behind doors to listen to conversations between the various people involved in order to establish the proof which led to appellant's indictment. On appeal appellant has not challenged the proof of the offense but has raised the issues discussed below.

The appellant's first argument is that the trial court committed prejudicial error in denying his application for a change of venue under KRS 452.220(2). The applicable section of that statute provides as follows:

(2) If the application is made by the defendant, it shall be made by petition in

writing, verified by the defendant, and by the filing of the affidavits of at least two (2) other credible persons, not kin to or of counsel for the defendant, stating that they are acquainted with the state of public opinion in the county objected to, and that they verily believe the statements of the petition for the change of venue are true. The Commonwealth's attorney or, in his absence from the county, the county attorney shall be given reasonable notice, in writing, of the application. If objections to all the adjoining counties are made and sustained, the change shall be made to the nearest county to which there is no valid objection, preference being given to counties of the same judicial circuit.

Appellant's application, which alleged that he could not receive a fair trial in Pike County because of pretrial publicity and hostile public feeling toward him, was supported by several affidavits. Prior to the beginning of the trial, the circuit court conducted a detailed hearing on appellant's motion for a change of venue. The publisher and advertising manager of the local newspaper testified on appellant's behalf. In opposition to the motion, the Commonwealth presented the testimony of an assistant trial commissioner, and was prepared to produce several other witnesses, when the circuit court overruled the motion.

■ There are a number of cases under KRS 452.220 interpreting the procedure to be followed when a motion for change of venue is filed. As a general rule, the motion addresses itself to the discretion of the trial court and will be subject to review only for an abuse of this discretion. *Hurley v. Commonwealth*, Ky., 451 S.W.2d 838 (1970). The standard by which this discretion is reviewed is rather imprecise. The question is largely one of fact and is, therefore, peculiarly within the province of the trial court. In Kentucky we have not been faced with the question of whether a denial of a motion for a change of venue under KRS 452.220 is, by itself, grounds for reversal of a conviction. In other jurisdictions the courts have held that the denial of the motion will not support a reversal of the conviction where the record establishes that the defendant received a fair trial, and there was no difficulty in obtaining an impartial jury. *Wilder v. People*, 86 Colo. 35, 278 P. 594 (1929); *State v. Gilbert*, 8 Idaho 346, 69 P. 62 (1902), and *State v. Herold*, 68 Wash. 654, 123 P. 1076 (1912).

■ We believe that the trial court found correctly that the affidavits supporting appellant's application for change of venue contained insufficient evidence to sustain the motion. The affiants stated that they agreed with appellant's allegations, but they gave no relevant evidence supporting that position. When appellant renewed his motion prior to trial, the trial court followed a procedure similar to that approved in *Grissom v. Commonwealth*, Ky., 468 S.W.2d 263 (1971). After the hearing on the motion, a number of questions during the voir dire of the jury were directed to the issues of fairness and preconceived opinion of guilt. In effect, the trial court continued to inquire as to the possibility of a change of venue. When the examination of the jurors was completed, the court correctly concluded that those selected would try appellant impartially and fairly. We are of the opinion that a change of venue should be granted only in those cases where the trial court reaches a conclusion, based on the affidavits and the evidence presented at a pretrial hearing, that it is relatively impossible to impanel a jury that has not preconceived an opinion as to appellant's guilt because of pretrial publicity.

Appellant's second ground for reversal is that he was denied the right to confront a witness against him, because the trial court would not allow him to question one of his prostitutes, Phyllis Angie Adkins, concerning her patrons. Ms. Adkins was the Commonwealth's first witness. On cross-examination when appellant's counsel attempted to question her about her clients, the trial court temporarily sustained the prosecutor's objection. On the following day in chambers the trial court allowed appellant's counsel to ask the question. Ms. Adkins then named several clients.

We have no doubt that appellant solicited the names of patrons to test the veracity of Ms. Adkins's testimony. However, the evidence which the Commonwealth subsequently presented sufficiently established the case against appellant, and he was not prejudiced by his inability to inquire as to Ms. Adkins's clients at the beginning of the trial. We believe that the inflammatory nature of such evidence far outweighed its probative value and the trial court did not abuse its discretion in excluding the evidence at that particular point of the trial.

Appellant next argues that the trial court committed prejudicial error when it failed to instruct the jury that the testimony of investigators Barton and Frazier of the Kentucky State Police needed to be corroborated because they were patrons as described by KRS 529.060(1). This argument is frivolous because appellant was not charged with prostitution within the purview of KRS 529.060(1).

Appellant's final ground for reversal is that the closing argument of the Commonwealth's attorney contained inflammatory and improper remarks to the jury, asserted his personal opinion as to appellant's credibility and guilt, and misled the jury by his comments on the instructions. Appellant argues that the following remarks were inflammatory:

> May it please the Court, Mr. Trivette, gentlemen of the jury.
>
> As Mr. Trivette said, most of the time we have the opportunity of saying ladies and gentlemen of the jury, but I think you observed what went on when you were being selected as jurors, all the women got kicked off.

and

> Who goes out and gets these go-go dancers; a fellow like that one sitting right over there.

and

> Now, Mr. Trivette said I was trying to take him away from his family and from his produce business. The only reason I'm trying to take him away from that is to get him out of your community, let

him go somewhere else for a while and see if it will teach him one of two things; stay out of Pike County, or run your massage parlors somewhere else.

Elswick cites the following prosecutorial remarks as prejudicial personal opinion:

> I don't think any of you gentlemen can be convinced that you're going to check in a motel, pay a fellow $150.00 after 11:00 o'clock, and lay there and let some girl rub on you all night. I just don't think you're going to buy that kind of stuff. If you do, let me tell you what I can sell you, I can sell either one of your children a package of heroin and write on it, sugar. (T.R. p. 359)

and

> I'd like to be on the jury for a while, I'd give him five (5) years and look in the books and see if there was any way I could give him ten (10). (T.R. p. 364)

Furthermore, the prosecutor stated in his closing argument that Anita Moriarty's testimony in regard to appellant's attempt to procure her for prostitution was all the corroboration Ms. Adkins's testimony needed to convict appellant. Elswick contends that this was a prejudicial misstatement of the law.

The most recent standard that has been set for closing arguments was stated in *Lynem v. Commonwealth*, Ky., 565 S.W.2d 141 (1978), in which the following argument was approved as not inflammatory:

> MR. FAMULARO: Punishment is for punishment's sake. Punishment and sentence in a penitentiary is more than that. It's to say to the man that did it: Don't do it again. But more than that, it's to say to all of these people in our community that are out there picking locks and rob and steal and make money easy and saying: I don't have to work for it. It's saying to those—your sentence here today is saying to those: Don't do it; we won't tolerate it. We're going to make this place a safe place, and we're going to stomp out people that rob at gunpoint.
>
> And this crime deserves more than the minimum punishment, Ladies and Gentle-

men, for the simple reason that there is not a more potentially dangerous crime than that of armed robbery. If somebody moved the wrong way or if some innocent walked in and spoofed them, it wouldn't be a robbery here before you; it would be a murder. And for that potential danger, it deserves the maximum.

I ask that you find this man guilty and impose the maximum of 20 years, and by that, attempt to stop this in our community. Thank you.

In the present case we are guided by the decision in *Donnelly v. DeChristoforo*, 416 U.S. 637, 646, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974), that states:

> Isolated passages of a prosecutor's argument, billed in advance to the jury as a matter of opinion not of evidence, do not reach the same proportions. Such arguments, like all closing arguments of counsel, are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.

It is apparent from the record that there was overwhelming evidence to convict the appellant. Taken in its entirety the closing argument of the Commonwealth's attorney does not warrant reversal of appellant's conviction under the standard now being applied in Kentucky. Also, appellant's argument that the prosecutor misstated the law has no merit. However, we are of the opinion that references such as those pointed out not only in this case but also in the *Lynem* case can certainly result in reversal in future cases. Drawing a reasonable inference from the facts proven is certainly one thing; however, inferring the potentiality of another crime is beyond the scope of closing argument. *See Morris v.*

*Commonwealth*, Ky., 478 S.W.2d 721 (1972); *Meyer v. Commonwealth*, Ky., 472 S.W.2d 479 (1971), cert. denied, 406 U.S. 919, 92 S.Ct. 1771, 32 L.Ed.2d 118 (1972); *Rigsby v. Commonwealth*, Ky., 495 S.W.2d 795 (1973); and *Ferguson v. Commonwealth*, Ky., 512 S.W.2d 501 (1974).

The judgment of the Pike Circuit Court is affirmed.

All concur.