595 P.2d 719

STATE of Idaho, Plaintiff-Respondent,

v.

Edward J. STEWART,
Defendant-Appellant.

No. 12605.

Supreme Court of Idaho.

May 31, 1979.

Larry C. Ashcraft, Mountain Home, for defendant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, David G. High, Deputy Attys. Gen., Boise, for plaintiff-respondent.

SHEPARD, Chief Justice.

This is an appeal from a conviction of second degree burglary. Defendant-appellant Edward Stewart, Patrick Lane and Lawrence Thomas were all charged with first degree burglary arising out of an incident at Madison's Furniture Store, Mountain Home, in December, 1975. I.C. § 18–1401. Defendants Lane and Thomas pleaded guilty to reduced charges of second degree burglary and, insofar as the record reveals, have not appealed their conviction. Defendant-appellant Stewart was tried before a jury on the charge of first degree burglary, and convicted of second degree burglary. Stewart appeals.

We have examined the numerous assignments of error made by Stewart and find all but one to be without merit. Since this one error is dispositive of this appeal, we find it unnecessary to discuss the appellant's other arguments.

The relevant events are as follows: At trial the prosecution called as its main witness Patrick Lane. Lane testified that on the afternoon of the day in question he, Stewart, and Thomas went to the furniture store before it closed to "case" it for the planned burglary. He then stated that later that same evening he and Stewart returned to the store in Thomas' van and loaded it with stolen merchandise. Although the salesman at Madison's could remember three young men browsing in the store that afternoon, he could not positively identify any of the three defendants. Thus, except for the testimony of Lane, no evidence placed defendant Stewart at the store at the times testified to by Lane. After the prosecution rested its case, defendant Stewart took the stand on his own behalf and testified that, while he had driven into Mountain Home, he had *not* entered the store to "case" it and was elsewhere doing his laundry during the time of the burglary itself. During cross-examination the prosecutor questioned Stewart, over the objection of counsel, as to the contents of an alleged statement made by defendant *Thomas* to the effect that he, Lane, and Stewart had in fact gone together to the

furniture store in furtherance of their plans to burglarize it. Although Stewart denied knowledge of the contents of the alleged inculpatory statement, he was forced to say that if Thomas had indeed made such a statement, then Thomas and Lane were both lying. Thomas was never called as a witness and his alleged statement was never formally admitted into evidence.

Defendant-appellant Stewart, relying upon *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), argues that the prosecutor's attempted impeachment by the use of a co-defendant's written statement violated his right to confront witnesses against him. We agree. The Sixth Amendment provides that: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." The Confrontation Clause is applicable to criminal proceedings in the state courts. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). We believe the circumstances in *Douglas* are sufficiently analogous to those in the present case. In *Douglas* two persons were accused of assault with intent to murder. Loyd was tried first and found guilty. Later, at Douglas' trial, the State called Loyd as a witness. Since Loyd had an appeal of his own conviction pending, he invoked his Fifth Amendment right to remain silent and refused to answer any questions. The prosecutor, under the guise of "refreshing" Loyd's memory, was permitted to read Loyd's confession before the jury. Since Loyd steadfastly invoked his privilege, and was thus "unavailable," Douglas could not question him as to statements in the confession inculpating Douglas. The Supreme Court held that Douglas' inability to cross-examine Loyd denied him "the right of cross-examination secured by the Confrontation Clause." *Id.* at 419, 85 S.Ct. at 1077. We reach the same conclusion here. *See also, Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Brookhart v. Janis,* 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); *Randolph v. Parker,* 575 F.2d 1178 (6th Cir. 1978); *Lewis v. Texas,* 521 S.W.2d 609 (Tex.Cr.App.1975).

The prosecution argues that there was no error because Thomas' alleged statement was never introduced into evidence. The actual introduction of an unavailable co-defendant's confession may well make a confrontation clause violation more discernible. *See Bruton v. United States, supra,* 391 U.S. at 128, 88 S.Ct. 1620. In *Douglas,* however, the circumstances are substantially similar to the instant case. The prosecutor in *Douglas,* although the confession had not been admitted, placed it before the jury under the guise of refreshing the declarant's memory. *Douglas v. Alabama, supra,* 380 U.S. at 416, 85 S.Ct. 1074. Here, the prosecutor's actions amounted to an improper attempt to place incompetent evidence before the jury under the guise that it impeached or discredited Stewart. *See* 81 Am.Jur.2d, Witnesses, § 596. It was improper as a matter of our evidentiary law to attack Stewart's credibility by proving statements made by another person not a witness in the case. *See, State v. Dickens,* 68 Idaho 173, 191 P.2d 364 (1948); *Goldsby v. United States,* 160 U.S. 70, 16 S.Ct. 216, 40 L.Ed. 343 (1895); *Miller v. United States,* 21 F.2d 32 (8th Cir. 1927); I.R.C.P. 43(b)(8); Bell, Handbook of Evidence for the Idaho Lawyer 42–43 (2d ed. 1972); 81 Am.Jur.2d, Witnesses, § 596. Thus, while the prosecutor's references to Thomas' alleged statement were not technically testimony, he may, in the words of the Supreme Court, have "created a situation in which the jury might improperly infer both that the statement had been made and that it was true." *Douglas v. Alabama, supra* 380 U.S. at 419, 85 S.Ct. at 1077. The Confrontation Clause was intended to protect the defendant in precisely these types of situations.

The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compel-

ling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Mattox v. United States,* 156 U.S. 237, 242–43, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895).

Since not every violation of the Confrontation Clause warrants reversal of a conviction, we must decide whether the error here was harmless. *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). Before the prosecutor referred to the alleged statement of Thomas, the testimony of Stewart that he had not "cased" the furniture store was directly contradicted only by the testimony of co-defendant Patrick Lane. Thus, the introduction of Thomas' inculpatory statements disrupted the testimonial equipoise that was then existing on this crucial element of the appellant's defensive theory. Because of this, we are unable to declare a belief beyond a reasonable doubt, that there was no reasonable possibility that the use of Thomas' alleged statement contributed to the conviction. *See, State v. Smoot,* 590 P.2d 1001 (Idaho 1978); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Lewis v. Texas, supra.* The conviction is reversed and remanded for a new trial.

DONALDSON, BAKES and BISTLINE, JJ., and SCOGGIN, J. Pro Tem., concur.

BISTLINE, Justice, specially concurring.

I. I concur in the holding that the use of the codefendant's written statement was a violation of the confrontation clause, and agree that this error was both critical and prejudicial—necessitating a reversal.

II. In my view at least one of the other assignments of error was meritorious to the point of requiring discussion. Stewart argues that the district court erred in not directing a verdict of acquittal.

As the Court's opinion notes, the testimony of the accomplice Lane was the sole evidence relied upon to place "Stewart at the store at the times testified to by Lane." Even with the improper examination of Stewart regarding the Thomas statement before the jury, the granting or denying of Stewart's motion was a close question and the ruling might have gone either way. With the improper examination removed from the evidence which would come before another jury, it would seem likely that the motion to direct would be granted. In connection therewith, it is observed that the trial court did instruct the jury that Lane was as a matter of law an accomplice, and there is considerable merit in Stewart's contention that the trial court should not have allowed the jury to determine whether Watson [1] was an accomplice.

III. Following Stewart's conviction, his attorney requested probation and a withheld judgment. The trial court granted probation, but did not withhold judgment of conviction and sentence. Stewart was sentenced to five years, and but for reversal of the judgment by this Court would have forever carried the scar of being a convicted felon.

In granting the probation, the district court imposed a 60 day county jail sentence which the record shows that Stewart has served. Not only did he serve the time, but upon recommendation of the county sheriff and the county prosecuting attorney, he was allowed 10 days off from his 60 day sentence.

Where it is now the decision of this Court that the judgment of conviction is reversed, the probation is likewise terminated, as is the authority of the State Board of Corrections. There is, of course, no way to turn back the clock and restore to Stewart the fifty days of his life spent in the county jail.

---

1. At trial, Watson testified that on the night of the burglary, Lane, Stewart and Thomas visited his trailer where he, like Stewart, heard of the planned burglary; he asked Lane to bring him a television set. That night, Lane returned and Watson paid him $150 for a new color television set and a wall clock.

That being so, and the other questions which are above discussed being extremely close, if not outright in favor of Stewart, hopefully it will be clear to the trial court and the prosecuting attorney that reversing and remanding for a new trial is not a dictate that there must be a second trial. That is a policy determination for the trial court and the prosecution under the provisions of I.C. § 19–3504 which vests in the prosecutor and in the trial court a great deal of discretion. If Stewart has performed the remainder of his probation as well as he did the incarceration portion, and over two years having now gone by, there may not be any valid reason to continue the prosecution of this case.